## JENKINS v. INTERNATIONAL BANK OF CHICAGO.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 254. Submitted April 26, 1888.— Decided May 14, 1888.

An assignee in bankruptcy appeared in a suit in equity which had been commenced by a bank against the bankrupt before his bankruptcy, to obtain a decree for the sale of securities pledged to the bank as collateral, and defended upon the ground of usury and usurious payments of interest. More than five years after the appointment of the assignee the bank filed a supplemental bill, setting up a former adjudication between the bankrupt and the bank made after the commencement of the suit, but before the bankruptcy upon the matter so set up in defence by the assignee. *Held*, that the supplemental bill set up no new cause of action, but only matters operating as an estoppel which were not subject to the limitation prescribed by Rev. Stat. § 5057.

THE case, as stated by the court, was as follows:

This case was before the Supreme Court of Illinois at the March term, 1881, when the decree therein, in favor of the present defendants in error, was reversed, and the cause was remanded to the Circuit Court of Cook County, Illinois, for further proceedings. The judgment is reported in 97 Illinois, 568. The cause was reinstated by the Circuit Court, and after further proceedings therein a final decree was rendered in favor of the defendants in error, which on appeal was affirmed in the Supreme Court of Illinois on November 17, 1884, and is reported in 111 Illinois, 462. From that decree the plaintiff has brought the present writ of error.

For the purpose of determining the only federal question arising upon the record, the following statement of the case made by the Supreme Court of Illinois, and prefixed to its opinion as reported in 111 Illinois, 462, is sufficient. That statement is as follows:

"A bill in chancery was filed February 17, 1875, in the Cook County Circuit Court, by the International Bank against Samuel J. Walker and other persons to foreclose and sell certain collateral securities which had been pledged by Walker to

the bank to secure the payment of principal notes of various dates made by Walker to the bank, some twenty-two of which were still held by it, and about ten others transferred to the other parties to the suit. The prayer of the bill was, that a decree might be entered fixing and establishing the amount of indebtedness due the bank from Walker, and for a sale of the collaterals so pledged, and the application of the proceeds to the payment of such indebtedness. Walker answered, alleging that a large amount of usurious interest entered into and formed a part of the alleged indebtedness, and insisting that an account be taken between the parties, and that such usurious interest be applied toward the satisfaction of such indebtedness, and that the collaterals be surrendered. Walker also filed a cross-bill making the same allegations, and praying for an account, and the application of such usurious interest, and for a surrender of the collaterals.

"July 6, 1877, the Circuit Court made an interlocutory decree in the cause, which denied the right to interpose the defence of usury, and directed an account to be taken of what was due on the principal notes held by the bank, excluding the defence of usury and of usurious payments of interest. In pursuance of an account taken as thus directed, dated January 15, 1878, a final decree was entered on April 25, 1878, finding the amount due the bank from Walker on the notes held by it to be, on January 15, 1878, $172,474, and directing a sale of the collaterals held by the bank to satisfy it. April 26, 1878, Walker went into bankruptcy, and July 31, 1878, Jenkins, the appellant, received the deed as his assignee in bankruptcy. The decree of April 25, 1878, was by this court, at its March term, 1881, in *Jenkins* v. *International Bank et al.*, 97 Illinois, 568, reversed on the ground that the direction to the master, in the order of reference, not to consider the question of usurious payments of interest upon any of the notes, was erroneous. The collaterals so sought to be sold had been specifically pledged by Walker to the bank, each to secure a particular note. The bank also held an agreement from Walker that each of the collaterals, though specifically pledged as security for a specific principal note, should also,

after the satisfaction of such principal note, be held as security for Walker's entire indebtedness to the bank, if any surplus remained which could be so applied after the satisfaction of such particular note.

"On March 11, 1874, George Wilshire and others filed their bill of complaint against the International Bank, David Frey, Samuel J. Walker and others, alleging that they had purchased of Walker certain premises, and setting out that Frey claimed to own a certain mortgage upon the same, executed by Walker prior to their purchase, which Frey obtained from the bank, but that there was nothing due upon it, and praying that the same might be surrendered and cancelled. Frey filed a cross-bill, setting up his principal note and the collateral note and security so executed by Walker to the bank, alleging that he had bought said principal note of the bank for full value, and praying for the foreclosure of the mortgage and sale of the premises. The bank also filed its cross-bill against Wilshire, Frey, Walker and others, setting up its general collateral agreement above referred to, alleging its right, by virtue thereof, to any surplus that might remain after the satisfaction of the indebtedness so due to Frey on said principal note which had been sold by it to Frey, not exceeding the amount due on the collateral note. The said general collateral agreement provided that the bank should have the benefit of said surplus, though it had sold such principal note to a third party. The bank, in its cross-bill, set up its entire indebtedness so due to it from Walker in the same way and with the same particularity that it had set up the same in the bill in this cause now under consideration, alleging that the notes were due and payable, and asking that it might have any surplus applied to the payment of such indebtedness after the satisfaction of the amount due to Frey. Walker answered that cross-bill in the same way, and alleging the same facts that he had alleged in answer to the bill in this cause. He also filed a cross-bill therein, setting up the same facts that he had set up in the cross-bill filed in this cause, and prayed for an account between himself and the bank, and for the application of all usurious interest in satisfaction of his indebtedness to the bank, and for

a return of the bank's collaterals, just as he had done in this case by his cross-bill.

"On February 28, 1878, a decree was entered in the Wilshire suit, finding the amount due from Walker to the bank to be the sum of $172,474. That decree stands in full force and effect, and over five years· have elapsed since the entry of the same. The case at bar having been re-docketed in the Circuit Court after the reversal of the first decree, on November 26, 1883, by leave of court the complainant, the International Bank, filed a supplemental bill, setting up the said proceedings, pleadings, and decree in the Wilshire suit as a former adjudication, and in bar to any further proceedings by Jenkins, assignee, for an account under his cross-bill herein, and as a conclusive adjudication of the amount due the bank upon the evidence of indebtedness set out in its original bill herein. The Circuit Court held the said former adjudication in the Wilshire suit a bar to any further account as to what was then due, and found the amount due upon the principal notes set out in the bill and offered in evidence to be the sum of $172,474 on January 15, 1878, as determined by the decree in the Wilshire suit. After the allowance of subsequent collections, the court found the amount due at the time of the decree to be $143,630.22, and rendered a decree for a sale of the collateral securities to satisfy said sum. This decree was affirmed by the appellate court of the first district, and the assignee appealed to the Supreme Court of the State."

*Mr. William T. Burgess* for plaintiff in error.

*Mr. George W. Smith* and *Mr. A. M. Pence* for defendants in error.

MR. JUSTICE MATTHEWS, after stating the case, delivered the opinion of the court.

Section 5057 of the Revised Statutes provides that "no suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an

adverse interest, touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee. And this provision shall not in any case revive a right of action barred at the time when an assignee is appointed."

It is contended by the plaintiff in error that the Supreme Court of Illinois erred in giving effect in this suit to the decree of February 28, 1878, in the Wilshire suit as set up by the International Bank in its supplemental bill filed herein November 26, 1883, more than two years after July 31, 1878, when the assignee in bankruptcy succeeded to the title of the bankrupt Walker. This contention is based upon the proposition that the filing of that supplemental bill in this proceeding was the commencement of a new suit against the assignee in bankruptcy by a person claiming an adverse interest touching rights of property vested in him. This is the only federal question presented by the record.

In support of this proposition, it is argued on behalf of the plaintiff in error that the supplemental bill set out, and sought a recovery upon, a cause of action distinct from that stated in the original bill. The original bill prayed for a decree against Walker upon his notes held by the bank, and for the satisfaction thereof a sale of the property held as security therefor. During the pendency of that bill precisely the same matters were put in issue in the Wilshire suit between Walker and the bank, and in that suit a decree was rendered finding the amount due. That decree in the Wilshire suit stands unreversed, and operates as an estoppel by way of *res adjudicata* between the parties. By way of proof or in pleading, it would be good as a bar in any subsequent suit between the same parties upon the same issues. Having been rendered after the institution of the present suit, it was competent for the complainant to bring it forward by a supplemental bill as conclusive evidence of the amount due for which it was entitled to take a decree, and as a complete answer to the defence set up by the plaintiff in error as the assignee of the bankrupt to the relief prayed for in the original bill, and to the relief

sought by the cross-bill. It was strictly new matter arising after the filing of the bill, properly set up by way of supplemental bill, in support of the relief originally prayed for. It can in no sense be considered as a new cause of action. It was not a bill to enforce the decree, nor was the complainant obliged to rely upon it as the sole ground of recovery, on the ground that the original cause of action had become merged in it. If the notes were merged in the decree, it was simply a change in the nature of the evidence to support the complainant's title to relief; the indebtedness remained the same, and the equity of the complainant to a foreclosure and sale of the securities remained unchanged. The statute of limitations, therefore, invoked by the plaintiff in error has no application.

This being the only federal question arising upon the record, and having, in our opinion, been decided correctly by the Supreme Court of Illinois, it is not within our province to consider any other question in the case.

*The judgment of the Supreme Court of Illinois is, therefore, affirmed.*