**CITY OF JERSEYVILLE, ILL., v. CONNETT.**

No. 4357.

Circuit Court of Appeals, Seventh Circuit.

April 15, 1931.

Walter J. Chapman, of Jerseyville, Ill., Logan Hay, of Springfield, Ill., O. H. Richards, of Jerseyville, Ill., and R. Allan Stephens, Leslie H. Vogel, and Leigh M. Kagy, all of Springfield, Ill., for appellant.

Louis F. Gillespie, of Springfield, Ill., William E. Wheeler and Martin Oehmke, both of East St. Louis, Ill., and Edmund Burke and George B. Gillespie, both of Springfield, Ill., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

The appeal is from a decree of foreclosure of a trust deed given by appellant, city of Jerseyville, an Illinois municipal corporation, upon its waterworks system, to secure payment of certain certificates of indebtedness of the city. To the bill of complaint, which was in usual form, the city filed its amended answer and amendment thereto to sustain its asserted defenses, mainly that the

certificates so secured by the trust deed constituted a debt of the city, and created an indebtedness beyond the city's constitutional debt limit of 5 per cent. of the assessed valuation of its property, and that the certificates of indebtedness and trust deed are therefore void.

Appellee filed motions to strike those parts of the answers comprising the allegations in support of such alleged defenses, which motions the court sustained, and, no further answer being filed, the decree in question was entered.

The answers alleged, in substance, that prior to January 1, 1921, the city had built and paid for and was operating a system of waterworks, including pumping plant, water tower, reservoir, wells, pumps, and system of distribution; that on September 3, 1921, the city council approved plans and specifications for additions and extensions to the old waterworks; that an understanding was had between the officers of the city and one Hanes and one Heller whereby the city should sell its old waterworks system to Heller for $40,000, and that Hanes would make a contract for constructing and selling to the city a complete waterworks system (including the old waterworks which Heller would convey to Hanes) for the sum of $235,000, for which the city would issue its special water fund certificates for that amount; that, upon conveyance to the city of the completed plant, $40,000 of such certificates should be turned over to the city for cancellation in discharge of the consideration to the city for the old plant; that Hanes did in fact submit to the city a bid for $215,000, subject to increase by changes to a total of not exceeding $235,000, and that in said complete system there might be included the old waterworks system; that on March 27, 1922, the city passed its Ordinance No. 63 for the sale of the old waterworks system, and called for bids therefor; that Heller submitted a bid of $40,000, which the city accepted, making a deed to him accordingly; that Hanes' bid for constructing the waterworks was accepted, and that Heller conveyed to Hanes the old waterworks system; that Hanes completed the contract and received the city's special water fund certificates together with the trust deed in issue, and conveyed the entire waterworks system to the city, and that $40,000 of the certificates which the city gave Hanes were delivered to the city and canceled, whereby the consideration to the city for the sale of the old waterworks system was satisfied.

The answers charged that the conveyance of the old waterworks system to Heller, and by Heller to Hanes, and by Hanes to the city, was not a bona fide transaction, but a device for the purpose of evading the constitutional debt limit of the city as prescribed in the Illinois Constitution [1]; that the assessed value of the taxable property of the city for the time in question was less than $1,600,000, 5 per cent. of which was the limit of indebtedness which the city might lawfully incur.

The decree, following the trust deed and the statute, provided that through the sale under foreclosure the waterworks system shall pass to such purchaser who shall agree for the least number of years, not exceeding fifty, to possess and operate the system, and who shall receive the prescribed rates for the period; and, at the expiration of the agreed term, shall return the system to the city in as good condition as when received, ordinary wear excepted.

The city relies mainly on City of Joliet v. Alexander, 194 Ill. 457, 62 N. E. 861, 863. In our consideration of this case we will assume that the transactions here respecting the sale of the old plant were a mere device for evading the constitutional debt limit, and, notwithstanding them, the old plant remained all along the property of the city.

In the Joliet Case the action was by a taxpayer to enjoin that city from issuing water fund certificates in the amount of $240,000 for extension and enlargement of its existing system, the ordinance therefor making provision for a "water fund" into which should be paid all the income, save operating expenses, from the entire waterworks system, for application to the payment of water fund certificates to be issued, and providing for a mortgage upon the entire water works system to secure payment of the water fund certificates. It was held that the giving of the mortgage upon the old system, to secure the payment of the certificates, would constitute the certificates an indebtedness of Joliet (at that time already indebted beyond its constitutional limit), and the decree of the lower court awarding the injunction was affirmed. It was also held that pledging

[1] Article 9, § 12. "No county, city, township, school district, or other municipal corporation, shall be allowed to become indebted in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes, previous to the incurring of such indebtedness. * * *"

the income of the entire waterworks system to secure indebtedness incurred for its enlargement and extension likewise made the certificates an indebtedness of the city within the purview of the constitutional limitation.

The propriety of appropriating the income from extensions alone, and of mortgaging the extensions to secure payment of the certificates, was there conceded. Just what sort of mortgage was contemplated in the Joliet Case does not appear, since the certificates and mortgage had not yet been issued. But it may be assumed that it would have been in compliance with the Act of April 22, 1899 (Laws 1899, p. 104), the same act under which the city assumed to act in the instant case, the applicable portions whereof appear in the margin.[2]

Here the instruments had long been executed and delivered, and the transaction completed years prior to the institution of this suit.

While the instrument of security is denominated "trust deed," we do not think that

[2] "Section 1. Every city, incorporated town and village in this State, is hereby authorized to acquire water works for supplying water for public use, and for domestic use of its inhabitants by building or purchasing a water works system or enlarging or extending an existing system. In payment for such building, purchase or enlargement any such municipality may issue certificates of indebtedness limited in their payment solely to the water fund hereinafter provided for; such certificates may bear interest at a rate of not exceeding six per centum per annum, payable semiannually, and shall only be issued at not less than par value in payment for the building, purchase or extension of a water works system."

"§ 3. Whenever any such municipality shall avail itself of the provisions of this act, the entire proceeds arising from the operation of the water works system thereof shall be paid into a fund known as the 'water fund' and which fund shall be and remain inviolate until the certificates issued under the terms hereof and the interest thereon is fully paid, and the treasurer of such municipality shall not pay any warrants drawn on said fund unless the same be drawn in payment of the necessary operating expenses of such water works system, or in payment of the certificates issued hereunder or the interest thereon.

"§ 4. In order to secure in the most ample manner the payment of the water certificates authorized as aforesaid, any such municipality may convey by way of mortgage or deed of trust the water works system so acquired or enlarged which said mortgage or deed of trust shall be acknowledged and recorded in the same manner as mortgages of real property, and which mortgage or deed of trust may contain such provisions and conditions as are reasonably necessary to fully secure the payment of said water certificates."

Section 5 provides for foreclosure of mortgage in case of default in payment of certificates, and that upon sale the waterworks system shall pass to such purchaser who shall for the least number of years not exceeding fifty possess and operate said system and receive the prescribed rates for the water during said period, and on its expiration shall return the waterworks system to the city in as good condition as when received, ordinary wear excepted.

it was such in essence in the sense in which that term is ordinarily employed and understood. The waterworks system, old or new, was not in fact conveyed, but only temporary possession of it, to give assurance that the income from the waterworks system (less operating expenses) would be devoted to the payment of the water fund certificates and interest. The security of the "trust deed" extended to this only. Under it the city could not lose the title to its waterworks, but, in case of foreclosure, the possession only, subject to the obligation on the part of the possessor to continue adequately to supply the city and its inhabitants with water, and at the time specified to return the waterworks system to the city.

Since the Joliet case there has intervened a condition under which the power over the property of the purchaser at such a sale, and his interest therein, has been materially modified, by the passage in Illinois of the act to provide for the regulation of public utilities, in force January 1, 1914 (Laws Ill. 1913, p. 460), and its successor, "An act concerning public utilities," in force July 1, 1921 (Laws Ill. 1921, p. 702). Thereby the state has assumed control over the reasonable conditions and rates upon which public utilities shall be operated. The prime object of such legislation is the protection of the public, as well as of the utility, in the matter of conditions and rates for the service.

Even though the mortgage contemplated in the Joliet case was to have been given under, and subject to, foreclosure pursuant to the provisions of the Act of April 22, 1899, the public utility legislation referred to was not then in existence, to limit and regulate the right and power which the purchaser under a foreclosure might acquire.

With the power of rate regulation in the hands of the state, a trust deed or mortgage, whereunder the use only of the utility property for a limited time may pass to the purchaser at the foreclosure, is sufficiently different from what it was when no such regulation and control by the state was assumed that, in our judgment, what was said in the Joliet case respecting the creation of a municipal debt by the giving of a mortgage on the enlarged plant to secure payment of the water fund certificates does not have application.

But the Joliet case went yet further in holding that the income from the plant, over and above operating expenses, is the property of the city, and, if pledged to pay the water fund certificates, the certificates be-

come an indebtedness of the city. We may say, in passing, that in the Joliet case it appears the city was having an annual income of $10,000 from its existing waterworks system. In the instant case it does not appear that the old system was yielding the city any income. Indeed, it might well be assumed from the pleadings as filed that the old system, in its outgrown and deficient state, was incapable of yielding the city any profit or income, and would so remain unless suitably supplemented.

In the case of Ward v. City of Chicago et al., 342 Ill. 167, 173 N. E. 810, 812, the ordinance of the city provided for issuing certificates of indebtedness to pay for the enlargement of the city's waterworks under the statute authorizing it, and provided that the certificates were payable only from revenue derived from the waterworks. It provided that certificates be issued for $12,000,000, which should not constitute an indebtedness of the city within any constitutional limitation, and that thereupon the entire revenue received from the operation of the city's system of waterworks should be deposited in a separate fund, to be used only in paying operating expenses, obligations theretofore issued payable from such revenue, and the certificates issued under the ordinance.

The bill to enjoin issuance of the certificates was brought upon the theory that since the certificates were an indebtedness of the city they contravene section 12 of article 9 of the Illinois Constitution, in that the ordinance authorizing them did not provide for the collection of an annual tax to pay them. Thus the question was whether the certificates created an indebtedness against the city. The court said: "The position thus taken seems to be that pledging the water fund creates indebtedness within the constitutional prohibition unless the pledge is confined to such precise income as can be directly traced to the particular new physical element of the plant to pay for which the obligation secured was issued, leaving the original income in effect intact and usable by the city for other purposes altogether."

The validity of this contention the court denied, and it affirmed the decree of the superior court dismissing the bill for want of equity.

Now it is true that in that opinion reference was made to the Joliet case, and the court stated that "these certificates were secured by a mortgage which covered both the existing system and the extensions constructed under the ordinance. The court properly held that an indebtedness within the constitutional prohibition was thereby created." But in the Ward case the effect of a mortgage was not in issue, for there was no mortgage, and what was said in approval of the Joliet case in no way conflicts with the views we have indicated respecting the conditions under which the Joliet decision was made. But the Ward case is distinctly antagonistic to that part of the decision in the Joliet case where it is said that the pledging of the income from the old plant for the payment of water fund certificates issued for enlargement or extension constituted the certificates an indebtedness of the municipality within the constitutional provision.

The Ward opinion makes extended reference to a decision of the same court in Maffit v. City of Decatur, 322 Ill. 82, 152 N. E. 602, 606. In that case it was sought to enjoin the city, already indebted beyond the constitutional limit, from carrying out an agreement for the supplementing of its insufficient water plant through an undertaking with a corporation, whereby the latter would construct and maintain, at large cost, a reservoir, and that the water rents of the entire waterworks plant should be paid into a fund, of which 90 per cent. was to be paid annually to the company which financed the construction until there was full repayment, in which case the company's property would be conveyed to the city. The court held that an indebtedness of the city was not created by this agreed method of paying the company and acquiring the addition to the plant out of most of the income from the entire plant, since no obligation was imposed on the city to pay the company.

Through the foreclosure of the trust deed appellant's plight in respect to its waterworks system is not substantially different from what it would have been had the trust deed not been given. The foreclosure of the trust deed did not assume to deprive the city of its legal title to its waterworks plant; this still remained as before, and, whether operated by the city or by the purchaser who for the time being was let into possession, the obligation to supply reasonable service at fair rates remained the same, with the state board of control in position to require and enforce such service and rates. Without the trust deed, the certificate holders had the right to insist that the net income from the entire waterworks system be applied to the payment of the certificates. With the trust deed, the certificate holders, or their successor, the purchaser at the sale under the trust

deed, would have no right beyond this. With or without the trust deed, only the net income of the system was applicable to the discharge of the certificates. With the regulatory power of the state, as prescribed by the statutes in force when the contract was made, even the purchaser at the foreclosure sale, in the operation of the plant for the time limited by his bid, would not likely be permitted to take unconscionable advantage of the city, nor of its water users, whose rates would in any case alone provide the fund out of which the purchaser would be reimbursed for his investment. Under the circumstances we do not think it can be fairly concluded that the giving of the trust deed upon the entire water plant constituted the certificates of indebtedness a present debt against the city, nor that the pledging of the entire income for the payment of the certificates had any such effect.

If this conclusion is justified, it is unnecessary to discuss the effect of the pretended sale to Hanes of the old plant, and his resale of it to the city as a portion of the new and complete plant. We may say, however, that if the figure of $40,000, as employed in the alleged sales, may be taken as the value of the plant, its sale at that price would have no necessary bearing upon the application of the constitutional debt limit. The sale of the plant did not create an indebtedness. Indeed, it does not appear from the pleadings that the city then had any indebtedness. The cancellation of the $40,000 of certificates would be equivalent to a cash payment by the city upon the new plant, and, as said in the Decatur case: "Nor did the payment of $35,000 to the water company when the contract was executed make it void. That sum was paid out of the city's current funds by check dated the same day as the contract. It was to all intents and purposes a cash transaction, and for that reason no indebtedness was created thereby."

But even if appellant then had constitutional right to create $80,000 of indebtedness, the face of the certificates, less the $40,000 which was canceled, and which may be treated as a cash payment, would be still considerably beyond its debt-contracting power if the certificates were held to be an indebtedness of the city.

It is most likely that the attempted sale to the city of the enlarged plant, at a price equal to the total of the certificates, was with the view of having the transaction regarded as one where the certificates would represent the unpaid purchase price, in which case, whether or not secured by the trust deed, they would not be an indebtedness of the city. This was practically so stated in the Joliet case in these words: "What is said relative to mortgaging property owned by the city, or pledging its existing income, is not intended to apply to a mortgage purely in the nature of a purchase money mortgage, payable wholly out of the income of property purchased, or by resort to such property."

The only other proposition we feel called upon to consider is in respect to the alleged disposition of the certificates by the city at less than par. Notwithstanding the general assertion in the answer that this is so, it appears that the balance of the certificates was turned over to Hanes in settlement of the contract price of the completed system. Pleadings are taken most strongly against the pleader, and we do not deem the allegations sufficient to indicate that, as between the city and Hanes, the certificates were issued at less than their face.

The amended answer was framed upon the theory that if the city sold the certificates at less than par, the certificates thereupon were void and were not collectible. We do not think this result would follow. We find no reported case in the more than thirty years since the statute of 1899 was passed wherein it has been so adjudicated. Where the responsibility and liability would rest for such a transgression of the statute we need not here determine.

For appellee it is earnestly contended that the recitals in the issued certificates or in the trust deed, or in both, of full compliance by the city with the Constitution and the statutes, equitably estops the city from disputing these recitals. Disposing of the case as we do upon other grounds, we do not deem it necessary to consider this one.

We are of opinion that the stricken portions of the amended answer and the amendment thereto as filed presented no valid defense to the bill, and the decree of the District Court is accordingly affirmed.