**CONNETT et al. v. CITY OF JERSEY-VILLE.**

**No. 6410.**

Circuit Court of Appeals, Seventh Circuit.
March 17, 1938.

Rehearing Denied May 13, 1938.

Emil J. Verlie, J. F. Schlafly, Jr., and C. Dana Eastman, all of Alton, Ill. (Green, Verlie & Hoagland, of Alton, Ill., of counsel), for appellants.

Brown, Hay & Stephens, of Springfield, Ill., Walter J. Chapman, of Alton, Ill. and I. D. Snedeker, of Jerseyville, Ill. (Logan Hay and R. Allan Stephens, both of Springfield, Ill., Walter J. Chapman, of Alton, Ill., and I. D. Snedeker, of Jerseyville, Ill., of counsel), for appellee.

Before EVANS, SPARKS, and TREANOR, Circuit Judges.

SPARKS, Circuit Judge.

The questions here presented involve appellants' alleged right to require appellee to increase its water rates in order to pay certificates of indebtedness held by appellants, subsequently reduced to judgment in foreclosure, which certificates were issued and sold by appellee to pay for the purchase and construction of its water plant.

The facts out of which the controversy arises are substantially as follows: Prior to 1923, the city of Jerseyville, Illinois, was without adequate fire protection and water supply system, and the safety, health and welfare of its inhabitants made it imperative that provision for those needs be made at the earliest time practicable. At this time the city owned and operated a waterworks distribution system, supplied by artesian wells. On July 10, 1922, the city, by Ordinance No. 67, decided to construct and purchase a new water system, which would include its old system and an extension of new lines. The new plan was to be financed by the issuance of water certificates under an Act of the Illinois Legislature of April 22, 1899, which authorized cities, towns and villages to build, purchase or extend waterworks systems for public and domestic use, and to provide for their cost. Illinois Session Laws 1899, p. 104, Smith-Hurd Stats. c. 24, §§ 440–445 notes. The substance of the pertinent provisions of this Act are set forth in the margin.[1]

---

[1] Sec. 1. Permits every city to acquire waterworks, and pay for the same by the issuance of certificates of indebtedness limited solely to the water fund, to bear interest not exceeding six per cent., and not to be issued at less than par value.

Sec. 2. The municipality shall pass an ordinance fixing in a general way the capacity of the waterworks system with plans and specifications open for inspection to the public. The ordinance shall fix the rates at which the water is to be supplied for all private purposes, and rates so fixed shall not be thereafter reduced until the certificates and interest are fully paid. It further provides for publication of the ordinance and a referendum upon petition of twenty per cent. of the voters.

Sec. 3. The entire proceeds arising from the operation of the waterworks system shall be paid into the "water fund" which shall remain inviolate until the certificates and interest are fully paid, and the treasurer of the municipality shall not pay warrants drawn on the fund except for operating expenses and payment of certificates and interest.

Sec. 4. In order to secure in the most ample manner the payment of the water certificates, the city may convey, by mortgage or deed of trust, the waterworks system, which mortgage or deed of trust may contain such provisions and conditions as are reasonably necessary to fully secure the payment of the water certificates.

Sec. 5. When default is made in the payment of water certificates for ninety days, the mortgagee or trustee may declare the whole of the principal and interest due and proceed to foreclose, and the decree shall fix reasonable rates for water furnished for public uses during the time the municipality shall be deprived of the possession thereof, and upon

This ordinance provided for plans and specifications, to be kept on file with the city clerk, open to inspection of the public, and for a schedule of rates for private purposes and the payment of $8.50 per month for each fire hydrant maintained by the city. It provided for publication pursuant to the Act of 1899.

On October 23, 1922, Ordinance No. 70 was passed, providing for the purchase of a water supply system, and the issuance of $235,000 of certificates of indebtedness therefor, secured by a mortgage deed of trust. It further provided for the same schedule of rates as set forth in Ordinance No. 67, and was published pursuant to the Act of 1899. No petition for a referendum was filed. Ordinance No. 70 described in detail the form of the certificates, and each provided "* * * that the City * * * promises to pay bearer * * * solely out of the 'special water fund provided for by Ordinance No. 70'" the amount of the certificate. This ordinance further provided that the deed of trust "shall contain the customary provisions and conditions so as to fully secure the payment of installments of principal and interest of said special water fund certificates * * * in such form and containing such conditions and provisions as shall be later prescribed by the City Council."

After the passage of Ordinance No. 70, the trustee named therein declined to act, and Ordinance No. 75 was passed. It approved the form of the mortgage trust deed and authorized its execution to the Union Trust Company of East St. Louis, as trustee. The mortgage so authorized and executed contained the clause which provided that the city obligated itself to pay the certificates "solely and only out of the 'Special Water Fund' provided for in Ordinance No. 70." It specified no particular schedule of rates but provided that the water supply to consumers for private purposes should be at the rates charged therefor "as they have been fixed by and in * * * (Ordinance No. 70) and that said rates will, if it becomes necessary to do so, be increased but shall not under any circumstances be reduced until all said wa-

ter fund certificates and interest thereon shall have been fully paid." Ordinance No. 75 was not published.

Thereafter, the receipts from the sale of water having proved insufficient to pay the principal and interest due on the certificates, the trustee resigned on December 15, 1927, and appellant, Connett, of St. Louis, Missouri, was appointed successor trustee. On December 29, 1927, on account of default in payment of past due certificates, he filed his bill of complaint to foreclose the deed of trust in the District Court for the Southern Division of the Southern District of Illinois. Thereupon, on December 8, 1928, a receiver was appointed to operate the plant, and that receivership is still pending. In the bill no reference was made to water rates for private uses, but among other things it was prayed that the court should fix the reasonable rates for the public users of water as provided in section 5 of the Act of 1899, Smith-Hurd Stats. c. 24, § 444 note. The bill was answered by the city, and the decree of foreclosure was entered on October 4, 1929, in which it was found that there was due and unpaid on the certificates the sum of $230,080, plus six per cent. interest thereon from June 1, 1929. On appeal, this court sustained the validity of the mortgage and the certificates, and affirmed the decree. City of Jerseyville v. Connett, 7 Cir., 49 F.2d 246. The mandate of this court on that ruling was filed in the District Court on May 8, 1931.

On June 10, 1931, a certificate holders' agreement was entered into by which holders of the special water fund certificates deposited with the creditors' committee, appellants herein, their certificates, with authority to the committee to take such proceedings, legal or otherwise, as it should deem necessary and proper for the purpose of protecting and enforcing the rights and interests of the holders. The committee was further authorized to purchase the mortgaged property, to apply to the Illinois Commerce Commission for authority to operate it as a public utility, and to take all necessary steps to so operate it, if it deemed it expedient.

---

sale the person offering to satisfy the decree for the income of said waterworks system for the least number of years not exceeding fifty, shall become the purchaser, and on satisfying the decree shall have possession of the waterworks for the time for which it was sold, during which period the purchaser shall be entitled to receive and collect for water furnished for private use at rates described in the ordinance provided for in Sec. 2 of this Act, and reasonable rates fixed for the public uses of water in such decree. At the end of said period the purchaser shall deliver the waterworks system to the municipality.

On July 2, 1931, the Illinois Legislature passed an Act, Laws 1931, p. 376, to amend the title, and sections 1 to 6 inclusive, of the Act of 1899. The substance of this amendment is in the margin.[2]

On November 6, 1931, the Master in Chancery offered the property for sale in accordance with the decree of foreclosure. No bids were received, and no further offer of sale has been made.

On September 17, 1936, appellant trustee, by leave of court, filed his pleading which constitutes the basis of the present proceedings. It is styled "Amended Petition and Supplemental Bill of Complaint." It recites the earlier proceedings in this case, including appellee's default and the foreclosure proceedings and decree, and, in substance, alleges: That appellee's water plant was offered for sale pursuant to the foreclosure decree, that there were no bidders, and the decree remains unexecuted; that although several years have elapsed, no part of the principal debt found due by the decree has been paid; that the rents, income and profits of the plant are insuffi-

cient to maintain a proper reserve for depreciation and to pay an appreciable part of the principal debt evidenced by the outstanding certificates, although the interest was reduced by the decree from six to five per cent; that no part of the total sum found due has been paid or satisfied; that pursuant to section 5 of the Act of 1899, and the provisions of the foreclosure decree, the rates for water furnished for public use, including public hydrant rentals, should be increased; and that it was appellee's duty to increase the rates charged for the private consumption of water either under section 4 of the Act of 1899, and the applicable provisions of the mortgage, or under section 5 of the Act of 1899, as amended in 1931.

There was a general prayer for relief, and the following specific prayer:

"That the rates to be charged for water supplied for private and public uses through said Water Supply and Distribution System of said City of Jerseyville be increased to such extent, and in such amount or amounts, and in such manner that the same shall be

---

[2] Sec. 1. Authorizes any city having a population of less than 500,000 people to build or purchase a waterworks system either within or without the corporate limits and operate a waterworks to extend such system. Smith-Hurd Stats. c. 24, § 440 and note.

Sec. 2. Such city shall pay the cost of building or purchasing the waterworks system by the issuance and sale of revenue bonds payable solely from the revenue derived from the operation thereof. The bonds shall bear interest not to exceed six per cent. per annum, and mature within the period of usefulness of such project, to be determined by the governing body, but in no event more than forty years from date thereof. Said bonds shall be sold in such manner as the governing body shall determine; and if issued at six per cent shall be sold for not less than par and accrued interest. For bonds bearing less than six per cent interest, the sale price shall be such that the interest cost shall not exceed six per cent. Smith-Hurd Stats. c. 24, § 441.

Sec. 3. The governing body of such city shall adopt an ordinance describing the contemplated project and refer to plans and specifications which will be open for inspection to the public. The ordinance shall set out the estimated cost, the period of usefulness, the amount of revenue bonds proposed to be issued, and all details in respect thereof. The ordinance may contain provisions for issuance

of additional revenue bonds thereafter as may be deemed necessary.

It further provides for publication of the ordinance and referendum on petition of twenty per cent of the voters. Smith-Hurd Stats. c. 24, § 442 and note.

Sec. 4. Sufficient revenue received from the operation of the waterworks shall be set aside as collected, and be deposited in the water fund which shall be used only to pay the cost of operation, depreciation and principal and interest on the bonds. Smith-Hurd Stats. c. 24, § 443.

Sec. 5. Rates charged for water by such city shall be sufficient to pay the cost of operation, maintenance, depreciation and principal and interest on all revenue bonds issued. Any holder of bonds or interest coupons issued under this Act may either in law or in equity, by suit, action, mandamus or other proceedings, enforce and compel the performance of all duties required by this Act, including the making and collection of sufficient water rates for the purpose, and the application of income and revenue thereof. Smith-Hurd Stats. c. 24, § 444.

Sec. 6. This Act shall be construed as authorizing the issuance of revenue bonds without referendum as required in the case of the issuance of bonds payable out of taxes levied for the payment of the same. Smith-Hurd Stats. c. 24, § 445.

adequate and sufficient at all times to pay the cost of operation and maintenance, to make all necessary repairs and replacements, to provide an adequate depreciation fund, and to pay the amount found due by said decree of October 4, 1929, together with interest upon said amount so found due by said decree, as required by law and by said decree."

After the city had filed its motion to dismiss the amended petitions and supplemental bill of the trustee, the Certificate Holders' Protective Committee, by leave of court, joined in and were made parties to the trustee's amended petition and supplemental bill, filed their petition and prayed for the same relief as demanded by the trustee. The city likewise moved to dismiss the committee's amended petition, and the court sustained both motions to dismiss. From this decree the trustee and committee have appealed.

The questions presented are whether appellants are entitled to the relief demanded, or any part thereof, under the provisions of the Act of 1899, as amended by the Act of 1931, or under the provisions of the original Act of 1899. The court dismissed both supplemental petitions on the ground that appellants were not entitled to recover under either Act.

■ In support of this ruling appellee first contends that appellants' pleadings constitute original bills and are not amendatory of nor supplemental to the original bill of foreclosure hence it urges there is no diversity of citizenship upon which to base jurisdiction. If such pleadings are truly amendatory and supplemental to the main action, then jurisdiction to hear them follows the jurisdiction of the original suit, and it is immaterial that there is not complete diversity of citizenship between the parties to the supplemental bill. Cincinnati, I. & W. R. Co. v. Indianapolis Union Railway Co., 270 U.S. 107, 46 S.Ct. 221, 70 L.Ed. 490; Root v. Woolworth, 150 U.S. 401, 14 S.Ct. 136, 37 L.Ed. 1123.

■ Appellee's reasons for considering the so-called supplementary bill as original in its character are that: (1) Its allegations are not germane to the original bill because its prayer is inconsistent therewith; (2) the original bill was for foreclosure and sale, while the present bill seeks a different relief, that of raising rates; (3) the trustee in the original bill was not entitled to the relief now sought. It is true

that the specific prayer of the present bill merely seeks relief under the amended Act of 1931, but there is also a prayer for general relief which would authorize the court to grant relief under either Act, if the law and facts should warrant it. It is quite true that, at the time the foreclosure decree was entered, the trustee was not entitled to relief under the amended Act, because it was not then enacted. However, if section 5 of the amendment be considered merely remedial in its character, we see no reason for precluding appellants from now relying upon it providing they have presented sufficient supplemental facts to warrant it. Again, if appellants are not permitted to rely on the amendment, they are entitled, under the general prayer, to whatever relief the original Act gives them, even to the extent of aiding the execution of the original judgment, if necessary. True, the original prayer was for foreclosure and sale, and the present prayer is for the raising of rates, without which the decree cannot be satisfied. The present proceedings, however, are in aid of execution of the decree entered in the original suit, and they are based upon allegations of fact which have occurred since the decree. Such proceedings are authorized by Equity Rules 19, 34 and 35, 28 U.S.C.A. following section 723.

■ A supplemental bill in aid of or to carry out a decree, or which alleges facts occurring since the decree which entitle the pleader to further relief, is germane to the original proceedings. Jenkins v. International Bank of Chicago, 127 U.S. 484, 8 S.Ct. 1196, 32 L.Ed. 189; Cyclopedia of Federal Procedure, Vol. 4, § 1157. It is an appropriate method of securing the benefit of the first decree when subsequent events have made necessary some further relief in order that the plaintiff may enjoy the full fruits of his victory in the first suit, and it is none the less so because there has been a final decree. Independent Coal & Coke Co. v. United States, 274 U.S. 640, 47 S.Ct. 714, 71 L.Ed. 1270; Root v. Woolworth, supra. If appellants' construction of either statute is correct, we think their pleadings are properly amendatory to their original bill and are supplemental in their character, hence there was no lack of jurisdiction.

■ Appellee's main contention with respect to the Act of 1899 is that it not only did not permit the city to increase water rates for private purposes, but it precluded it from doing so. This conclusion is based on that part of section 2 of the Act which

requires the ordinance to fix such rates, and that the ordinance be published, and a referendum permitted, if desired by twenty per cent of the voters. These requirements were complied with and there was no request for a referendum. Hence, appellee argues that the rates thus fixed could never be changed, at least in any other manner than by ordinance duly passed and published, with the right of referendum permitted if desired by twenty per cent of the voters.

With this contention we are unable to agree. These provisions must be read in connection with other pertinent provisions of the Act in order to arrive at the intention of the legislature, the public and the parties. The object of the Act was for the benefit of the public, in this particular case for the benefit of Jerseyville. It not only authorized appellee to construct a much needed water system, but it provided means by which it could establish a sufficient credit with which to finance the project. Without the latter the former would be of no avail. Without protection to the moneylender the latter could not be accomplished. With this thought in view the entire Act clearly manifests an intention to protect the certificate holders by all reasonable means until the certificates are fully paid. Section 2 prohibits a reduction of rates until the debt is paid; section 3 holds the proceeds inviolate, save for operating expenses and the debt; section 5 accelerates the due dates in case of default, and authorizes a decree which shall fix reasonable rates for public uses in case the city is deprived of possession; and "in order to secure in the most ample manner the payment of the water certificates" section 4 authorized the city to execute a mortgage or trust deed in which it might insert "such provisions and conditions as are reasonably necessary to fully secure the payment of said water certificates."

Pursuant to this authority the city inserted in its trust deed a provision which obligated the city to increase the rates to consumers for private purposes, if and when it became necessary to pay the certificates. The District Court found that that necessity had arisen, and we think the insertion of this obligation in the trust deed was reasonably necessary to fully secure the payment of the debt. Subsequent events have conclusively established this fact. So far as this record discloses, the rates fixed in the ordinance were sufficient, at the time the trust deed was executed, to pay all operating expenses and leave a surplus for the payment of the certificates as they became due. It is quite obvious that since then the operating expenses have increased, or the income has decreased, or both, to such an extent that the income is practically consumed by the operating expenses, and there is nothing left to apply on the debt. Yet we are told that the provisions of section 2 preclude an increase of rates to pay the debt. We think this is not a fair interpretation of the Act. The legislature obviously assumed that the city had authority to change the rates as fixed in the ordinance, for in section 2 a decrease is prohibited until the debt is paid. If the city had no power to alter the rates without express legislative permission then there was no need of inserting the clause with respect to a decrease.

Appellee's contention, however, is that since the rates were fixed in the ordinance for the benefit of the public, in compliance with the legislative mandate, the city and the public have a right to rely upon them. We think this section was not enacted, or fixed rates required, entirely for the benefit of the public. Clearly the prohibition of the decrease was directly for the benefit of the investor. A fixed rate was quite necessary at that time in order that investors might bid intelligently, which in turn would redound to the benefit of the city. To say that the certificate holders agreed to abide by this rate for twenty or fifty years, regardless of subsequent events, is to read into the statute more than the language warrants. There is not one word in the Act which expressly denies the right to increase rates, and we think there is nothing in its language upon which an implication to that effect may be fairly based.

Moreover, the city and the public were bound to know that under section 4, the city was permitted to insert any provisions or conditions in the trust deed reasonably necessary to secure the payment of the certificates. Such provision was inserted by the city, in which it agreed to increase rates when necessary. It is not denied that the insertion was a reasonable one, if legal, and the court found the increase necessary. We think the insertion was authorized by section 4 of the Act. Furthermore, the city by Ordinance No. 126 construed Ordinance No. 70 as permitting increased rates. This ordinance which was passed on January 31, 1929, before the foreclosure decree, slightly increased the pri-

vate rates. We do not mean by this that the city could bind itself by its actions to the continuance of an illegal act, but the fact that it later construed the Act as we now construe it, by inserting the clause increasing the rates, and raised no objection for thirteen years after executing the trust deed and receiving the money, should not be considered lightly now. With respect to the public, it knew the language of the Act; it knew the city's interpretation of it, as expressed in the recorded trust deed; it knew that the rates to private consumers had been increased, for it paid them, and yet it raised no objection to this interpretation for thirteen years. These facts do not appeal to a court of equity in aid of appellee's contention, the result of which would prevent the enforcement of a valid judgment and preserve to the city its water plant practically without cost. The fact that Ordinance No. 75 was not recorded seems to us to make no difference in the result. Whether valid or invalid it neither adds to nor detracts from appellants' rights.

 It is further contended by appellee that after the expiration of the term at which the decree of foreclosure was rendered, the judgment is no longer open to any amendment, revision, modification or correction which involves the exercise of the judgment or discretion of the court upon the merits. With this we quite agree, but as stated, it applies only to instances where alterations as to the merits are involved. A decree of foreclosure, and a sale under it, merges and extinguishes the mortgage, but until there is a sale the mortgage is not extinguished. Jones on Mortgages, 8th Ed., Vol. 2, §§ 1182, 1196; Prudence Co., Inc. v. 160 West Seventy-Third St. Corp., 260 N.Y. 205, 183 N.E. 365, 86 A.L.R. 361; Chicago Joint Stock Land Bank v. McCambridge, 343 Ill. 456, 175 N.E. 834; American Trust & Safe Deposit Co. v. Eldred, 267 Ill.App. 176. This proceeding merely seeks remedial relief in aid of the foreclosure decree, which reserves jurisdiction for that purpose. It does not seek to alter any fixed property right. See McNair v. Knott, 302 U.S. 369, 58 S.Ct. 245, 82 L.Ed. —.

Appellee relies upon Karel v. City of Eldorado, D.C., 32 F.2d 795. Karel had filed his bill for an injunction restraining the city from receiving water service unless the city should fix and establish adequate rates for both public and private consumption of water. The bill averred that the established rates were not sufficient to pay operating expenses and interest upon the certificates, and meet the sinking fund requirements. The city answered that the challenged rates had been fixed by the agreement of the parties and could not be changed. The controverted clause of the ordinance, which also appeared substantially in the mortgage, provided: "It is agreed that the foregoing rates shall not be reduced until all of said special water fund certificates and interest thereon shall have been fully paid. Nothing contained in this ordinance shall be construed as limiting the right of the city, or any other agency recognized by law, to increase water rates or charges." By these provisions the city reserved the privilege of increasing the rates, but it did not bind itself to do so. The court so held, in denying the injunction. That case is to be distinguished from the one at bar, in this, that here the city bound itself to increase the rates when necessary, by virtue of the provision in the mortgage, which we think was authorized to be inserted in the mortgage by section 4 of the Act of 1899. Smith-Hurd Stats. c. 24, § 443 note.

 It is further contended by appellee that section 5 of the Act, Smith-Hurd Stats. c. 24, § 444 note, precludes appellants from having the rates raised. The language referred to provides that upon foreclosure sale the person offering to satisfy the decree for the income of the plant for the least number of years, not exceeding fifty, shall become the purchaser, and on satisfying the decree shall have possession of the plant for the time for which it was sold, during which he shall be entitled to receive and collect for water for private use at rates described in the ordinance provided for in section 2 of the Act. The property, however, had not been sold. There was no bidder and no one has satisfied the decree. What right a purchaser who had satisfied the decree would have under section 5 is not before us. It is sufficient to say that the section does not apply to a creditor whose decree is unsatisfied.

Appellants contend that even if it should be held that they are not entitled to relief under the original Act, they are entitled to it under the Amendatory Act of 1931, which was enacted after the entry of the foreclosure decree. This is denied by appellee on the ground that to so construe it would be to give the amendment a retroactive effect, which clearly was not the intention of the legislature, and if so, it would

be in abrogation of fixed contractual obligations, in excess of the legislative power. It argues that the enactment is more than an amendment, in that it changes the whole system including the substantive law with respect to the establishment of waterworks systems of the character here involved.

 It is conceded that, as a general rule, a statute will not be given a retroactive effect unless it clearly appears that it was the intention of the legislature so to do; nor will it be done if it will disturb or interfere with vested or substantive rights. However, a curative or remedial enactment which merely affects the remedy or procedure will be given a retroactive effect. Funkhouser v. J. B. Preston Co., 290 U.S. 163, 54 S.Ct. 134, 78 L.Ed. 243; McKinley v. McIntyre, 360 Ill. 382, 196 N.E. 506; Berkovitz v. Arbib & Houlberg, Inc., 230 N.Y. 261, 130 N.E. 288.

██ The enactment of 1931 purports to be an amendment of the title, and sections 1, 2, 3, 4, 5 and 6 of the Act of 1899, Smith-Hurd Stats. c. 24, §§ 440 and note, 441, 442 and note, 443–445. It is beside the question to say that it changes the entire substantive law with respect to the subject matter. The legislature, had it desired to do so, could have repealed the Act of 1899. For reasons best known to itself it did not wish to do so, but, instead, it amended each section. Some of those sections were substantive in their character and others were remedial and procedural, and if the legislature intended to extend the benefit of the amended remedial and procedural sections to the holders of existing obligations of the city under the Act of 1899, it had the right to do so, for no one can have a vested right in any particular remedy. This would be true, whether or not the substantive sections were changed, and the Act would still be amendatory in its character.

In the Act of 1931 provision is made for revenue bonds, payable solely from the revenue of the plant, and the old provision for a mortgage or trust deed is eliminated, as well as the entire substance of sections 4 and 5 of the old law. In section 5 as amended, Smith-Hurd Stats, c. 24, § 444, there is a provision that "rates * * * shall be sufficient at all times to pay the cost of operation, maintenance, provide an adequate depreciation fund and pay the

principal of and interest upon all revenue bonds issued under this act," and a further provision authorizing any court of competent jurisdiction to compel by mandamus, or otherwise, any defaulting municipality to perform "all duties required by this Act." There is no saving clause of any kind. It would be unfair to the legislature to assume that it intended to strike down the remedy provided in the original Act, with no saving clause, without extending the relief afforded by the amendment to the existing certificate holders. There is no apparent reason why this should be done. To do so would be utterly inconsistent with the expressed intention of the legislature in both acts with respect to securing the payment of the debts. To carry out such intention "in the most ample manner" would not only benefit the investor, but it would directly benefit the city, for without such provision it could have had but little, if any, hope of financing the project.

It is urged by appellee, however, that section 5 of the amendment applies only to holders of bonds or interest coupons under "this Act," and to the enforcement of duties required by "this Act." Hence it says that the words "this Act" refer solely to the amendment, and not to the original Act. As before stated, the legislature furnished us with the title to "this Act." It is the Act of 1899 as amended by the Act of 1931, and we think amended section 5 was intended to cover the obligations under both Acts. It is true the obligations under the Act of 1899 are referred to as "Special Water Fund Certificates," while those issued under the later Act are referred to as "Revenue Bonds" payable solely from the water fund, yet all are written promises under seal to pay a stated sum at a given time, out of a particular fund, and generally speaking they are bonds.

We think that appellants were entitled to an increase of water rates pursuant to the provisions of the trust deed, and that they were entitled to a hearing for the determination of the amount. The decree of the District Court is reversed and the cause is remanded with instructions to overrule appellee's motions to dismiss the amended petitions and supplemental bill of complaint, and to require appellee to answer by a day fixed by the District Court.