CINCINNATI, INDIANAPOLIS & WESTERN RAIL-ROAD COMPANY *v.* INDIANAPOLIS UNION RAILWAY COMPANY; THE CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY; AND THE PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

Nos. 328, 329.   Argued November 25, 1925.—Decided March 1, 1926.

1. Upon an appeal to this Court from a decree of the District Court dismissing a petition for want of ancillary jurisdiction, the equity of the petition, and questions whether it should be denied because of acquiescence or laches, are not open.   P. 115.

2. As ancillary to a decree of railway foreclosure, by which the purchaser of the property was allowed a fixed time in which to elect not to assume outstanding leases and contracts, and which reserved for future adjudication all questions not disposed of, and permitted all parties, including the purchaser, to apply to the court for further relief at the foot of the decree, the District Court had jurisdiction, irrespective of citizenship, over a petition of the purchaser seeking to be relieved of agreements made by its predecessors with a terminal company, upon the ground that the purchaser's failure to relieve itself of them by a valid election was due to a mistake.   P. 115.

3. A delay of two years in filing such petition is not a reason for dismissing it for want of jurisdiction.   P. 114.

Reversed.

JURISDICTIONAL appeals from decrees of the District Court dismissing ancillary petitions.   See 279 Fed. 356.

*Mr. Murray Seasongood,* with whom *Messrs. George W. Wickersham, F. J. Goebel* and *Lester A. Jaffe* were on the brief, for appellant.

The jurisdiction of this Court is sustained by *Hoffman* v. *McClelland,* 264 U. S. 552; *Central Union Trust Co.* v. *Anderson County,* 268 U. S. 93; *Smith* v. *Apple,* 264 U. S. 274.

The District Court had jurisdiction to entertain appellant's petition because it is ancillary to the foreclosure action. *Central Union Trust Co.* v. *Anderson County, supra; Cincinnati, Indianapolis & Western R. R.* v. *Indianapolis Union Railway Co.,* 279 Fed. 356; *Lang* v. *Choctaw, Oklahoma & G. R. R.,* 160 Fed. 355; see also *Hoffman* v. *McClelland,* 264 U. S. 552; *Wabash R. R.* v. *Adelbert College,* 208 U. S. 38; *Julian* v. *Central Trust Co.,* 193 U. S. 111; *Fulton Nat. Bank* v. *Hozier,* 267 U. S. 276. That a bill to reform or rescind or otherwise grant equitable relief is ancillary, see *Rosenbaum* v. *Council Bluffs Ins. Co.,* 37 Fed. 724; *Bradshaw* v. *Miners Bank,* 81 Fed. 902. Diversity of citizenship is not necessary in an ancillary bill. *Kripendorf* v. *Hyde,* 110 U. S. 276.

If a petition seeking relief from an election made by mistake is ancillary to the suit the decree in which created the right of election, then, surely, mere delay, explained or unexplained, does not deprive the petition of its ancillary character. Delay, accompanied by elements of estoppel, may sometimes be a ground for refusing relief on the merits. It does not, however, oust the jurisdiction of the court, any more than was the case in *Oliver Am. Trading Co.* v. *Mexico,* 264 U. S. 440, where the trial court mistakenly thought the immunity of a sovereign State from suit prevented the court from taking jurisdiction as a federal court, or than was the case in *Smith* v. *Apple,* 264 U. S. 274, where the trial court incorrectly thought that the federal statute, forbidding enjoining prosecution of suits in state courts, prevented the federal court, as a federal court, from entertaining jurisdiction.

Since the decree dismissed the petition on the sole ground of want of jurisdiction and a sufficient certificate was filed, the case was properly appealed to this Court. *Sov. Camp Woodmen* v. *O'Neill,* 266 U. S. 292. The allegations of the original petition show there was neither waiver nor acquiescence, since there was no estoppel or prejudice suffered by appellees, nor any other feature involved making it inequitable to grant relief. The allegations of the amendment to the petition specifically deny waiver or acquiescence on the part of appellant and, on a motion to dismiss, must be taken as true. There was no " instant duty " on appellant, as a " condition precedent " to obtaining relief, to bring suit immediately after learning of its legal rights, in May, 1922.

*Messrs. Joseph S. Graydon* and *Joseph J. Daniels,* with whom *Mr. Albert Baker* was on the brief, for appellees.

There was error in the decree if, and only if, the relief sought by appellant was not relief from an accepted and binding contract. That such was the relief sought by appellant is conclusively demonstrated by an analysis of the facts in the record. Such contract became in all respects valid and binding on appellant either (a) on December 30, 1915, the day on or before which the purchaser at the foreclosure sale was required by the foreclosure decree to file a written election not to adopt the contract, or (b) on May 31, 1922, being thirty days after this Court terminated the prior litigation by refusing certiorari, or (c) within a reasonable time after May 1, 1922, the day that this Court denied the writ of certiorari in the prior litigation. For the purposes of the case at bar, it is immaterial which of these three views is taken as to the time when such contract became binding on appellant.

The obligation of the appellant is, under the authorities, as complete and binding an obligation as any obligation arising out of a contract executed between two private

parties. It has been repeatedly held that a sale or contract made by an order of court creates, when confirmed by the court, precisely the same situation as is created by a sale or contract between private persons. *Files* v. *Brown,* 124 Fed. 133; *Morrison* v. *Burnette,* 154 Fed. 617; *In re Burr Mfg. & Supply Co.,* 217 Fed. 16; *Earle* v. *McCartney,* 112 Fed. 372; *Cropper* v. *Brown,* 76 N. J. Eq. 406; *Hayward* v. *Wemple,* 136 N. Y. Supp. 625; *Koegel* v. *Koegel,* 83 N. J. Eq. 179; *Pewabic Mining Co.* v. *Mason,* 145 U. S. 356.

Appellant's petition is simply a suit seeking rescission of appellant's accepted contract with the Indianapolis Railway Company. Of such a suit the District Court has no jurisdiction. Appellant's petition seeks rescission of an accepted contract, not modification of the District Court's decree of foreclosure, nor rescission of appellant's election. The accepted contract which appellant seeks to rescind has been binding on appellant since December 31, 1915, or at the very latest since May 31, 1922.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

These are appeals under § 238 of the Judicial Code, allowed February 18, 1925, in two cases between the same parties from identical decrees of the District Court for the Southern District of Ohio. By agreement they are to be treated in every respect as one. The certificate of the District Court is that the petition as amended " does not show the existence of the requisite diversity of citizenship, nor the existence of a Federal question, and that this Court, not having found the said petition to be ancillary to any prior suit, but having found the said petition to be original, did thereupon dismiss the same upon the sole ground of want of jurisdiction." The question of jurisdiction is whether a petition by the purchasing company at a railway foreclosure sale, in seeking to

reform, because of mistake, its contract of purchase in imposing upon it liability for rentals under a terminal facilities contract, is a suit ancillary to the original foreclosure suit so that jurisdiction exists in the Federal District Court to hear it, without regard to the citizenship of the necessary parties to the petition.

The two original foreclosure suits were brought, one by the Equitable Trust Company of New York and Elias J. Jacoby, as trustees, against the Cincinnati, Indianapolis & Western Railway Company, and the other by the Central Trust Company of New York and Mason, trustees, against the same railway company. There was the necessary diversity of citizenship in each case, and the appellant in this present suit, the Cincinnati, Indianapolis & Western Railroad Company, is a newly organized company, the assignee of the purchaser at the foreclosure sales of the whole railroad property covered by all the mortgages foreclosed. It became a party to each cause as such assignee, as permitted in the decree of foreclosure in each case, and it will be hereafter called the purchasing company.

The Indiana, Decatur & Western Railway Company owned the part of the railway from Indianapolis to Springfield, Illinois. The Cincinnati, Hamilton & Indianapolis Railroad Company owned the part from Indianapolis to the East. In 1902 they were merged into a corporation called the Cincinnati, Indianapolis & Western Railway Company, which gave a first refunding mortgage upon the two properties. It was expected that the bonds secured by this mortgage would be used in refunding two underlying mortgages on the eastern part, and a single underlying mortgage on the western part. The refunding was not completed and the two foreclosure suits, already referred to, were filed at the same time in the same court, so that by an identical decree in each case the purchaser was enabled to acquire title to the con-

solidated railway free from the liens of the four mort-
gages.   The decree of foreclosure in each case contained
a provision giving the purchaser under the foreclosure
sale, and his successors or assigns, the right for a period
of thirty days after the delivery of the master's deed, to
elect " whether or not to assume or adopt any lease or
contract made by the defendant consolidated company,
or its predecessors in title, and such purchaser, his suc-
cessors or assigns, shall be held not to have adopted or
assumed any such lease or contract in respect of which
he or they shall have filed a written election not to as-
sume or adopt the same with the Clerk of this Court
within the said period of thirty days."

Within the thirty days, the purchasing company filed
in the two foreclosure cases what it called an election
" not to assume or adopt the contract dated September
20, 1883, and the amendment of August 20, 1906, under
which the tracks of the Union Railway Company are
occupied in Indianapolis, in so far as such rights are con-
ferred by the signature of the Indianapolis, Decatur &
Springfield Railway Company to said contract.   This
assignee hereby expressly accepts such contract as made
with the Cincinnati, Hamilton & Indianapolis Railroad
Company, and desires to accept the benefits of the con-
tract with said company, and the right to occupy the
tracks of the Union Railway Company and the Indi-
anapolis Belt Railway Company therein conferred."

The Indianapolis Union Railway Company is a com-
pany engaged in operating a union railway depot and
union railway tracks for the use of several railroads enter-
ing that city, its properties having been owned by five
so-called proprietary companies and conveyed by them to
it.   It had acquired a perpetual lease of a belt line.   Sep-
tember 20, 1883, an agreement was made between the
Union Railway Company and five proprietary companies,
by which each of the companies in the use of the terminals

became liable for a fixed rental which was to be paid by each company, whether the terminal was used or not. Then there were admitted seven non-proprietary companies to the joint use of the Belt Railway and Union Railway Company property under the same agreement as to a fixed rental, in addition to which there was to be a payment in proportion to the use on the basis of wheelage. At this time the Indianapolis, Decatur & Springfield Railway Company owned the part of the railroad here in question west of Indianapolis, and it bound itself for one-thirteenth of the rental, and the Cincinnati, Hamilton & Indianapolis Railroad Company owning the other part of the railroad here in question east of Indianapolis became bound for another one-thirteenth of the rental. In 1902, the two companies were united under the name of the Cincinnati, Indianapolis & Western Railway Company, and, from that time until the foreclosure in 1915, the united company paid two-thirteenths of the rentals. When, however, the decrees were made in the foreclosure of the two parts of the railway, the purchasing company, the appellant here, sought to reduce its rental from two-thirteenths to one-thirteenth by electing to take the contract for rental of its predecessor in title of the eastern part of the united railway, and to refuse to elect to take the contract of rental of its predecessor in title for the western part of the railway, and, having filed such an election, it declined to pay more than one-thirteenth of the rental.

There then intervened in the original foreclosure suits the Indianapolis Union Railway Company and the then proprietary parties to the terminal agreement, by petitions asking that the purchasing company show cause why it should not be ordered to make payment to the Indianapolis Union Company of the full amount that would have been payable to that company by the Cincin-

100569°—26——8

nati, Indianapolis & Western Railway Company, the defendant in the foreclosure in both suits. Jurisdiction was taken of this petition, and the District Court held that the so-called election was unauthorized and improper, and that the purchasing company, for failure to elect to reject the contracts entirely, was responsible for two-thirteenths of the total rentals. This controversy was carried to the Circuit Court of Appeals for the Sixth Circuit, which affirmed the District Court. *Cincinnati, I. & W. R. Co.* v. *Indianapolis Union Railroad Company,* 279 Fed. 356.

The order of the Circuit Court of Appeals was made in 1922. In 1924, the present intervening petition was filed by appellant as purchaser against the Indianapolis Union Railway Company and the proprietary companies, which had been parties to the preceding controversy. In this, the petitioner, the present appellant, sought to have the court relieve it from the effect of its so-called ineffective election by which it made itself responsible, according to the decree of the Circuit Court of Appeals, for two-thirteenths, on the ground of its mistake in not electing to reject the whole contract for use of the terminals. On the hearing of the petition, to which the Indianapolis Union Railway Company and the other defendants filed answers, the District Court held that the delay of two years between the coming down of the decree from the Circuit Court of Appeals, in 1922, until 1924, when the petition was filed, was a delay constituting acquiescence which would prevent the consideration of the petition. The petitioner then filed an amendment to its petition, in which it set out reasons thought by it to justify the delay, including a statement that attempts had been made to secure relief by a personal negotiation with the interested parties, to whom it had indicated from the first that it did not intend to acquiesce in an obligation to pay the rentals. The District Court, conceiving that by reason of the delay of two years such relief as the petitioners

sought must be obtained by an independent suit, and not by an ancillary proceeding, held that, there being no diversity of citizenship or federal question to justify jurisdiction, the petition must be dismissed.

The sufficiency of the petition in equity is not for us to consider. We have here only the question of jurisdiction. On that issue, we think the District Court was in error. The present proceeding deals with the effect of the decree upon which the petitioner became the owner of the property. The previous litigation between the parties to this petition as to the effect of the attempted election in which the petitioner was defeated involved a construction of the decree of sale and the purchaser's action under it in the foreclosure proceedings. That decree provided that "all questions not hereby disposed of are reserved for future adjudication. Any party to this cause may at any time apply to this Court for further relief at the foot of this decree" It also provided " that the purchaser shall have the right to enter his appearance in this Court and to become a party to this cause," and it made itself a party under that order. The Circuit Court of Appeals in its opinion in the case already cited said:

"Notwithstanding the property had passed from the possession of the court, appellant, [that is, petitioner], as the purchaser, would have an undoubted right to apply to the court for relief respecting the controversy over its right of election under the sale."

At the instance of the defendants here, the purchaser was held by its so-called election to be bound to the two contracts, and, having been thus defeated, it seeks the equitable intervention of the court, on the ground of mistake, to secure relief from this adjudicated effect of its unsuccessful attempt at election. Assuming that it has a right to seek such a remedy, (and we must do so in this hearing), we do not see why it may not obtain that relief in the same forum by ancillary proceeding in the original suit in foreclosure in which it was held to have bound

itself by its purchase and ineffective election. It may be that equity will not give it relief from mistake under the circumstances. It may be that it has acquiesced and may be denied relief on that account. It may be that it has been guilty of laches. But these are questions on the merits. We can not see that they affect the jurisdiction of the court to consider the issue thus raised.

The present proceeding is only another phase of the same litigation, carried on as ancillary to the foreclosure suit, in which the purchasing company was found to be bound by its purchase to pay two-thirteenths of the rentals to the Indianapolis Union Railway. The purchaser seeks to recur to the circumstances under which it attempted to accept liability to pay one-thirteenth of the rental and to reject the other one-thirteenth. It says that, as the Circuit Court of Appeals has held that its attempted election was invalid and ineffective for the purpose, it should have equitable relief from the oppressive obligation to pay two-thirteenths on the ground of its mistake and be permitted to make an election which will relieve it from the contract to pay any rental at all, as it might have done when it became the purchaser. Such a proceeding is certainly ancillary to the enforcement of the decree of sale and the contract of purchase. *Rosenbaum* v. *Council Bluffs Insurance Company,* 37 Fed. 724; *Bradshaw* v. *Miners' Bank of Joplin,* 81 Fed. 902. Clearly it is a natural and closely proximate sequence of the sale by the court and requires the interpretation of its decree and the attempted election of the purchaser under it and the consideration of its effort to correct the alleged inequitable result. "A purchaser or bidder at a master's sale in chancery subjects himself *quoad hoc* to the jurisdiction of the court and can be compelled to perform his agreement specifically. It would seem that he must acquire a corresponding right to appear and claim, at the hands of the court, such relief as the rules of equity proceedings entitle him to." *Blossom* v. *Railroad Company,*

1 Wall. 655, 656.  It is well settled that where a bill in equity is necessary to have a construction of an order or decree of a federal court, or to explain, enforce or correct it, a bill of this kind may be entertained by the court entering the decree, even though the parties interested for want of diverse citizenship could not be entitled by original bill in the federal court to have the matter there litigated.  *Julian* v. *Central Trust Company,* 193 U. S. 93, 113; *Minnesota Company* v. *St. Paul Company,* 2 Wall. 609, 633; *Wabash Railroad* v. *Adelbert College,* 208 U. S. 38, 54; *Hoffman* v. *McClelland,* 264 U. S. 552, 558.

The District Court had jurisdiction, and the decree dismissing the petition should be

*Reversed.*