## CONNETT et al. v. CITY OF JERSEYVILLE.

No. 7636.

Circuit Court of Appeals, Seventh Circuit.

Nov. 14, 1941.

Rehearing Denied Jan. 14, 1942.

R. Allan Stephens and Logan Hay, both of Springfield, Ill., Isaac D. Snedeker, of Jerseyville, Ill., W. J. Chapman, of Alton, Ill., and Brown, Hay & Stephens, of Springfield, Ill., for appellant.

J. F. Schlafly, Jr., Emerson Baetz, and Verlie, Eastman & Schlafly, all of Alton, Ill., for appellees.

Before EVANS, SPARKS, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

This is the fourth time the matters involved in this litigation have been before this court.

On August 8, 1923, the City of Jerseyville, Illinois executed a mortgage on its waterworks, and also pledged therein the revenues from the operation of the waterworks, to the Union Trust Company of East St. Louis, Illinois, as trustee, to secure certificates of indebtedness of the face value of $235,000, the proceeds of which were used to acquire the waterworks plant. The certificates of indebtedness were payable out of the revenues to be derived from the operation of the plant, and not from any other of the City's revenues.

On December 15, 1927, the Union Trust Company, an Illinois corporation, resigned as trustee. On December 23, 1927, W. C. Connett, a citizen and resident of Missouri, the appellee in this case, was elected trustee by the holders of the certificates of indebtedness, as provided in the mortgage. The certificates, as to interest payments, were in default. The Trustee gave notice of default, and that he elected to declare the whole indebtedness due and payable. Thereafter, the trustee instituted foreclosure proceedings. During foreclosure proceedings, Willis J. Spalding was appointed receiver, and he operated the plant a number of years, and was succeeded by M. S. Hanes, who is now acting as receiver.

On October 4, 1929, a decree of foreclosure was entered. After the decree of foreclosure, an appeal was taken to this court in which the validity of the certificates of indebtedness was challenged, and this court sustained the validity of the certificates. The case was remanded and the foreclosure decree entered. The property was offered at public sale but there were no bidders.

Since a receiver was in charge and the court had expressly reserved jurisdiction in the case, the trustee, Connett, and a committee representing the certificate holders filed a petition seeking a rate increase. This petition, it was believed, was authorized not only by the terms of the mortgage but by virtue of a statute of Illinois. § 444, Chap. 24, 1939 Illinois Revised Statutes.

The City moved to dismiss this petition, which motion was sustained by the District Court, and upon appeal to this court, the decree of the District Court was reversed, with instructions that the defendant be required to answer. Connett v. City of Jerseyville, 7 Cir., 96 F.2d 392. The defendant did answer, and the court proceeded to fix by its decree a schedule of rates. From that decree, the City appealed to this court, which reversed the decree of the District Court, holding that the fixing of rates was a legislative function, which the court was powerless to perform. Connett v. City of Jerseyville, 7 Cir., 110 F.2d 1015, 1021.

In the opinion of this court in the last cited case, the court said:

"It does not follow, however, from what we have said that the District Court was without jurisdiction to exercise its judicial powers in aid of the enforcement of the rights of the holders of certificates of indebtedness in accordance with the provisions of the amendatory act of 1931. We have already noted that under our previous decision the Municipality of Jerseyville was under a legal duty to charge such rates for water as should be required to pay the cost of operation, maintenance, provide an adequate depreciation fund and pay the principal of and interest upon the certificates of indebtedness; and we also held that the amendatory act of 1931 (Smith-Hurd Stats. Ill. c. 24, § 443) gave to the holders of these certificates the right to enforce and compel performance of such duty. We are of the opinion that the District Court has jurisdiction to give such relief. * * *

"We are satisfied that the District Court has jurisdiction to determine the amount of principal and interest due on the certificates and to enforce and compel defendant's performance of its duties under the amendatory act by a decree which will require the defendant to adopt a schedule of rates which will produce sufficient income to pay the costs of operation, maintenance, provide an adequate depreciation fund and pay the interest upon the certificates of indebtedness and discharge the principal within a reasonable period of time."

This indicates clearly what the duty of the City is, and asserts the power of this court to compel the performance of that duty.

With the intention to enforce the performance, by the City, of its duty, upon the remand of the last case to the District Court, the prayer of the petition of the committee representing the certificate holders was amended to read as follows:

"The City of Jerseyville * * * be now commanded forthwith through its proper corporate authorities, to adopt a schedule of rates * * * which will produce sufficient income from the operation of said water works to pay the cost of operation and maintenance thereof, provide an adequate depreciation fund therefor, and pay the interest upon the certificates of

indebtedness, and discharge the principal thereof within a reasonable period of time, which interest and principal totaled $283,209.28 on August 29, 1938."

The City moved to strike this amendment, which was overruled, and the District Court entered a decree, the essential part of which reads as follows:

"The defendant City of Jerseyville, a municipal corporation, is now commanded forthwith, through its proper corporate authorities, to adopt a schedule of rates for. the Jerseyville Waterworks which will produce sufficient income to pay the costs of operation, maintenance, provide an adequate depreciation fund and pay the interest upon the certificates of indebtedness owned by the plaintiffs and discharge the principal thereof within a reasonable time."

It will thus be seen that the decree of the District Court follows strictly the statute of Illinois and the opinion of this court in 110 F.2d 1015. From this order the present appeal was taken.

■■ This action of the District Court is now challenged by the City on the ground that the court is without jurisdiction to do indirectly what it cannot do directly, namely, engage in the legislative function of fixing a rate schedule. But the court is not making a rate schedule. That is clearly the duty of the City. The court is merely compelling the City to do its duty, in conformity with the statute enacted by the State of Illinois, and when the City does its duty, it, and not the court, will be exercising the legislative power. The water rates will not be fixed in the decree of the court but in the ordinance of the city council. When the City is under duty to act and refuses to act, that is not an act of discretion, but an arbitrary act, contrary to law. Interstate Commerce Commission v. United States, 224 U.S. 474, 32 S.Ct. 556, 56 L.Ed. 849; Huidekoper v. Hadley, 8 Cir., 177 F. 1, 40 L.R.A.,N.S., 505. When a court compels a city to do its duty as defined by statute, and to act, that does not control the discretion of the city as to how it shall act. Even though the court in its decree may incorporate the standards for action as laid down by the statute, as in the case at bar, it is not an invasion of the City's discretion. State Board of Equalization v. People, 191 Ill. 528, 61 N.E. 339, 58 L.R.A. 513.

■ We readily admit that the court cannot exercise the legislative function of making rates. That was the holding of this court in the last appeal of this litigation. However, in that case, Judge Treanor set out in these words what had been decided by this court on previous appeals:

"It necessarily follows from that decision that the defendant-municipality is under a legal duty to adopt a schedule of rates which will produce sufficient income to pay the cost of operation and maintenance of its water system and to provide an adequate depreciation fund and to pay the principal of and interest upon its indebtedness to plaintiffs. The foregoing duty was imposed by the act of 1899 and by the terms of the mortgage which was executed under authority of said act. Also we held that as a result of the amendatory act of 1931 the holders of the water certificates had a right to enforce and compel performance of the duty of the making and collecting of sufficient water rates for the foregoing purposes 'either in law or in equity, by suit, action, mandamus or other proceeding.'"

■ It must be apparent by now that the law of this case is that this court has the power and will exercise it to compel the City to perform its clear legal duty.

Courts have for years compelled city councils to do their legal duty, though the performance of that duty may require the exercise of discretion and be in the performance of legislative functions, such as levying taxes. City of East St. Louis v. United States, 120 U.S. 600, 7 S.Ct. 739, 30 L.Ed. 798; Von Hoffman v. City of Quincy, 4 Wall. 535, 71 U.S. 535, 18 L.Ed. 403; City of Cairo v. Campbell, 116 Ill. 305, 5 N.E. 114, 8 N.E. 688; People v. Massieon, 279 Ill. 312, 116 N.E. 639.

Indeed, regulatory bodies have been compelled by mandamus to assume jurisdiction and fix rates. Interstate Commerce Commission v. United States, 224 U.S. 474, 32 S.Ct. 556, 56 L.Ed. 849; State v. Lewis, 187 Ind. 564, 120 N.E. 129.

In another case, the Interstate Commerce Commission had refused to follow the mandate of Congress requiring it to value certain railroad properties, on the ground that the mandate of Congress was impossible of performance. But the Supreme Court of the United States held that the Commission could be compelled by mandamus to proceed to the performance of its duties as laid down in the Act of Congress. Kansas City Southern Ry. Co. v. Interstate Commerce Commission, 252 U.S. 178, 40 S.Ct. 187, 64 L.Ed. 517.

■ The rule which governs courts in the exercise of their powers of compulsion in these matters is well expressed in Huidekoper v. Hadley, 8 Cir., 177 F. 1, 9, 40 L. R.A.,N.S., 505, in the following words:

"The rule is well settled and fully recognized by us that when discretion is conferred upon public agents or officers their acts in the lawful exercise of that discretion cannot be controlled by mandamus. The rule is also well settled that, although the exercise of discretion will not be controlled by mandamus, yet the writ will lie to compel the person or the body in whom the discretion is lodged to proceed to its exercise."

■ We think it clear on principle and authority that the court had the power to compel the City to perform its statutory duty and to enact an ordinance prescribing a rate schedule in conformity with the requirements of Illinois Revised Statutes, 1939, Chap. 24, Sec. 444.

■ The appellant next contends that the court was without jurisdiction because of the Johnson Act. 28 U.S.C.A. § 41(1). It is rather difficult to fit the facts of this case into the Johnson Act, which envisaged, primarily, a controversy with a state agency on one side and a public utility on the other, and the act sought to safeguard the orders of the state agency. However, the act by its terms provides that it shall not affect suits commenced in the District Courts prior to May 14, 1934. The foreclosure suit from which this proceeding stems was filed in 1927. This ancillary proceeding was commenced in 1936 by an amended and supplemental petition to the foreclosure suit. This court held this pleading to be amendatory of and supplementary to the original foreclosure proceeding. Connett v. City of Jerseyville, 7 Cir., 96 F. 2d 392-397.

We therefore conclude that the Johnson Act does not apply.

■ The jurisdiction of the court is again challenged by the assertion that the appellee, Connett, the trustee and a resident and citizen of Missouri and successor to the Union Trust Company, an Illinois corporation, is by reason of his succession as trustee, an assignee of the rights under the mortgage and as such assignee, he cannot maintain this suit, because his predecessor trustee, who was a resident and citizen of Illinois, could not have done so. The section of the statute relied upon is 28 U.S.C. A. § 41(1), which reads in part as follows:

"No district court shall have cognizance of any suit * * * to recover upon any promissory note or other chose in action in favor of any assignee * * * unless such suit might have been prosecuted in such court * * * if no assignment had been made."

This challenge comes a little late and without force when urged for the first time in this ancillary proceeding. The court must be deemed to have decided this jurisdictional question in the main proceeding to foreclose, and since it has decided the question of jurisdiction, it cannot be collaterally attacked in this ancillary proceeding. City of New Orleans v. Fisher, 180 U.S. 185-196, 21 S.Ct. 347, 45 L.Ed. 485, Dowell v. Applegate, 152 U.S. 327-340, 14 S.Ct. 611, 38 L.Ed. 463; McCabe v. Guaranty Trust Company, 2 Cir., 243 F. 845-848.

■ Furthermore, we do not think the appellee, Connett, is an assignee within the meaning of the statute referred to. His rights under the mortgage did not come from any assignment, but came from an election by the certificate holders under the terms of the mortgage. Change in rights was effected not by assignment, but by election. A change in office was effected, and not a change by way of assignment. When we speak of "assignee" in the ordinary sense, we mean an assignee in fact. Pulsifer v. Arbuthnot, 59 Kan. 380-382, 53 P. 70; Burlington National Bank v. Beard, 55 Kan. 773, 42 P. 320.

We therefore conclude that the successor trustee was not an assignee within the meaning of the statute.

■ In this proceeding which is ancillary, diversity of citizenship is not material. Cincinnati, I. & W. R. Co. v. Indianapolis Union R. Co., 270 U.S. 107-117, 46 S.Ct. 221, 70 L.Ed. 490. Since diversity of citizenship is not material to those seeking to enforce by ancillary proceeding certain rights that grew out of the main suit, then it would seem to be immaterial whether the successor trustee is an assignee. Certainly the certificate holders' committee, who are as much responsible for the present proceeding as the trustee, have standing in this ancillary proceeding regardless of diversity of citizenship, and if the trustee dropped out they are qualified to carry on the proceeding. Indeed, the statutory duty

that arises under the Illinois statute, Smith-Hurd Stats.Ill. c. 24, § 444, is in favor of the bondholders or certificate holders, and not the trustee.

The case is affirmed.