James Blackstone Memorial Library Association et al., Appellees, v. Alton Railroad Company, Appellant.

Gen. Nos. 42,081, 42,082.

Heard in the first division of this court for the first district at the December term, 1941. Opinion filed September 9, 1942. Rehearing denied September 23, 1942.

SILAS H. STRAWN and FRANK H. TOWNER, both of Chicago, for appellant.

FOLLANSBEE, SHOREY & SCHUPP, of Chicago, and PERKINS, MALONE & WASHBURN, of New York, N. Y., for appellees; JOHN E. GAVIN and CLYDE E. SHOREY,

both of Chicago, and WATSON WASHBURN, of New York, N. Y., of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Seven cases were brought in the Circuit court of Cook county by plaintiffs who are holders of preferred stock of a railroad company, the predecessor of defendant, to recover dividends due and unpaid on such stock. The seven cases were tried as one before the court without a jury, and June 30, 1941, there were findings and judgments for plaintiffs in each case. In four of them the judgments totalled $14,726.34 and in the other three $38,420.18. Defendant, to reverse these judgments, prosecutes two appeals to this court where they have been consolidated and submitted on one record and one set of abstracts and briefs.

The record discloses that March 15, 1878, the Kansas City, St. Louis & Chicago Railroad Company, entered into an agreement with The Chicago and Alton Railroad Company, which was modified by a supplemental agreement dated May 29, 1879, whereby the Kansas City Company, under the agreement of 1878 leased in perpetuity its line of railroad extending from Mexico, Missouri, to Kansas City, Missouri, a distance of about 160 miles. The railroad was thereafter to be operated by the lessee and May 29, 1879, the same two companies, together with the United States Trust Company as third party, entered into a supplemental agreement which provided for the issuance by the Kansas City Company, of $1,750,000 of preferred stock; that the lessee ''covenants and agrees to and with the said party of the third part that it the said party of the second part, will, on the first days of February, May, August, and November in each year hereafter, at the office or agency of the said party of the second part, in the City of New York, pay to the holders of said preferred stock of $1,750,000 a quar-

terly dividend of 1½% for each calendar year ending December 31, free of all United States taxes thereon.''

The Chicago and Alton Railroad Company under the lease as amended, operated the properties of the Kansas City Company to March 8, 1906, on which date it and the Chicago and Alton Railway Company were consolidated as the Chicago and Alton Railroad Company. Thereafter the consolidated company assumed the agreements of 1878 and 1879 and operated the Kansas City Company's property from March 8, 1906 to August 30, 1922, making all payments required by the agreements. August 30, 1922, receivers were appointed for the consolidated company in a proceeding brought in the United States District Court in Chicago, in a case entitled, *"The Texas Company v. The Chicago and Alton Railroad Company, et al."* which apparently was in the nature of a creditor's bill. Some time afterward, foreclosure proceedings were made a part of the *Texas Company* case. The receivers of the consolidated company from the date of their appointment in 1922, operated the properties of the Kansas City Company until July 18, 1931, when all of the railways and properties of the consolidated company were conveyed to defendant, The Alton Railroad Company, by deed, pursuant to a foreclosure decree entered July 6, 1929, in the proceeding in the Federal Court, the defendant being the assignee of the purchasers of the properties at the foreclosure sale. The properties conveyed included the agreements of 1878 and 1879, together with the leasehold estate of the consolidated company in the properties of the Kansas City Company. From August 30, 1922 to July 18, 1931, the receivers of the consolidated company paid all taxes, dividends, and other expenses necessary to perform the obligations of the agreements of 1878 as modified by the agreement of 1879. After the properties were conveyed to defendant, July 18, 1931, it continued to pay all obligations, in-

cluding the dividends specified in the supplemental agreement of 1879 until the dividends which became due during 1939 and on February 1 and May 1, 1940. It is to recover these dividends that the instant cases were brought.

While these suits were pending in the Circuit court, defendant Alton Railroad Company, on June 11, 1940, filed its petition in the Federal Court proceeding praying that the court make effective, by proper order, the railroad's written election not to assume the agreements of 1878 and 1879 filed the day before with the clerk of the Federal Court. Motion to strike the petition for insufficiency was made by the Kansas City Company and certain stockholders of that company. The motion was sustained and the petition dismissed December 26, 1940. *Texas Co. v. Chicago & Alton R. Co.*, 36 F. Supp. 62. An appeal was taken to the United States Circuit Court of Appeals, where the decree of the District Court was reversed February 12, 1942, and the cause remanded with directions to hear the case on its merits, 126 F. (2d) 83. Pending the appeal in the Circuit court of Appeals, the cases at bar were tried and judgments in plaintiffs' favor entered June 30, 1941.

The question whether the defendant railroad company had the right to elect on June 10, 1940, not to assume the agreement of 1878 as modified May 29, 1879, was strenuously contested in the United States District Court, the United States Circuit Court of Appeals, on the trial in the Circuit court of Cook county, and in this court.

Counsel for defendant, railroad company, contend it had the right to elect not to assume the agreement as modified, (1) by virtue of the decree entered in the Federal Court July 6, 1929, in the receivership proceeding; (2) by the provision of the deed conveying the property to it, July 18, 1931, and (3) by a number of orders entered by the United States District Court extending

the time within which such election might be made. While on the other side, counsel for plaintiffs contend that what the receivers did and what the defendant railroad company did after the properties were conveyed to it, conclusively show that the agreement of 1878, as modified, was assumed and is binding on the defendant railroad company.

The decree of foreclosure entered in the receivership proceeding provides that "Any purchaser of the property described in this decree, or of any parcel thereof, and whether or not he has exercised or used any rights thereunder, shall, subject to the provisions hereinafter specified, within one year after the delivery of the deed or deeds or other instrument or instruments of conveyance or assignment and transfer by the Special Master of the property purchased by him, or within such additional period as the Court may hereafter by its order or decree permit, have the right to elect not to assume or adopt any lease, traffic, trackage, terminal, crossing or operating agreement, or other contract, not fully performed, made or assumed by the Consolidated Company, or any predecessor company (but not any contract, lease or agreement entered into, made, assumed or adopted by the Receivers which does not expressly reserve to the purchaser the right to elect not to assume or adopt such contract, lease or agreement), which is a part of the property embraced in such deed or deeds or other instrument or instruments of conveyance or assignment and transfer. Such election shall be made by instrument in writing, signed by the said purchaser and shall contain a general description of the contracts or leases which he elects not to assume or adopt, and shall be filed with the Clerk of this Court within the aforesaid period. No user of rights prior to the expiration of said period shall be deemed to conclude

the Purchaser in respect of such election, and upon the filing of such election said Purchaser shall be deemed not to have assumed or adopted the said contracts or leases.''

The special master's report of sale, dated December 27, 1930, recites the property he sold which includes the lease of March 15, 1878, as modified May 29, 1879; the petition filed by the defendant, Alton Railroad Company, as assignee of the purchasers at the sale praying for a confirmation of the sale and the delivery of a deed, the deed to be in the form attached to the decree, but not to be delivered until the Interstate Commerce Commission had approved the acquisition and authorized the operation of the railroad by The Alton Railroad Company. The report further recites that the form of the deed provides that the purchase of the properties and acceptance of the deed by the grantee should not be construed as an election to accept any lease, etc., quoting from the provision of the final decree hereinabove referred to. A decree was entered approving the master's report of sale and approving the form of the deed which provided that its acceptance by the grantee ''shall not be construed as an election to accept any contract, lease, or agreement sold as part of the property offered pursuant to the Final Decrees . . . and that nothing in this Indenture contained shall be construed to constitute an assumption, adoption, or ratification by the grantee of any such contract, lease, or agreement; but the grantee, its successors and assigns shall, within one year after the date of the delivery of this Indenture, or within such additional period as the Court may hereafter by its order or decree permit, have the right to elect not to assume or adopt any lease, . . . or other contract not fully performed'' etc. The deed also prescribes the method of exercising the right of election as that prescribed in the final decree and ex-

pressly provides, "No user of rights prior to the expiration of such period shall be deemed to conclude the grantee in respect of such election."

The evidence further shows that the defendant railroad procured from the Interstate Commerce Commission the right to acquire and operate the railroad (see Alton Railroad Company Acquisition and Stock Issue, 175 I. C. C. 301). The records before that body are in the evidence before us.

We do not stop to analyze the evidence in this respect but think it sufficient to say we are of opinion that the report made to the Interstate Commerce Commission does not show that the railroad company assumed the agreement of 1878 as modified in 1879 but is to the effect that the Interstate Commerce Commission authorized the railroad to assume the agreement as modified, if it desired to do so.

The United States District Court held that the pleadings, on which the matter was disposed of by that court, failed to show that the lease in question was shown to have been assumed by the proceedings had before the Interstate Commerce Commission. But the court further held that the operation of the railroad by the receivers for about 9 years, established the adoption of the lease by the receivers and that the purchaser from the receivers who had operated for another 9 years had no right to disaffirm the lease. [36 F. Supp. 62.] As stated, the Circuit court of Appeals reversed the decree of the District court in an exhaustive opinion and held that what had been done by the receivers, and by the railroad company afterward did not constitute the assumption of the agreements because of the decrees and the orders of the United States District Court in extending the time within which non-assumption might be exercised.

We feel that we are bound by the decision of the Circuit court of Appeals. *Cincinnati, Indianapolis & Western R. Co. v. Indianapolis Union Ry. Co.*, 270 U.

S. 107. The United States courts had jurisdiction before the instant actions were brought and although the case was disposed of by the Federal Courts on the pleadings, we think the evidence offered in the Circuit court of Cook county, which is in the record before us, does not change the situation. The United States Circuit Court of Appeals having decided that defendant had a right on June 10, 1940 to elect not to assume the two agreements, and, since no step was taken to have this decision reversed by the Supreme Court of the United States, we think this question ought not be relitigated. *Toucey v. New York Life Ins. Co.,* 314 U. S. 118. "It is just as important that there should be a place to end as that there should be a place to begin litigation." *Stoll v. Gottlieb,* 305 U. S. 165.

Counsel for the defendant further say that "the only question for decision is the date as of which defendant's election became effective. The dividends sued for herein are claimed to have become due from defendant during 1939 and on February 1 and May 1, 1940, prior to June 10, 1940, the date on which defendant filed its election not to assume the 1878 and the 1879 agreements. But under the law, defendant's election was effective as of July 18, 1931, the date on which it took over the properties of the consolidated company. Its operation of the properties of the Kansas City Company since July 18, 1931, was provisional only, and its only obligation growing out of such operation was to turn over to the Kansas City Company the net earnings resulting from such operation. In other words, defendant never did have any obligations under the 1878 and 1879 agreements." Whether this is technically so or not it is unnecessary for us to decide because we are of opinion that, by the conduct of the parties in paying the 6 per cent dividend on the preferred stock as rent in quarterly dividends for a period of about 18 years, viz., by the receivers, from

August 30, 1922 to July 18, 1931, and from the latter date by the defendant railroad company to May 1, 1940 and made no complaint until June 10, 1940, when it filed its notice not to assume, in the clerk's office of the United States District Court in the receivership proceeding, defendant cannot now be heard to say that it can now go back to 1931 and ask for an accounting to ascertain whether it has paid too little or too much. Defendant having taken the position, for a period of about 9 years, that it was liable for the dividends, and not having elected not to assume the agreements of 1878 and 1879 until after the amounts claimed by plaintiffs had accrued, will not now be permitted to stultify itself and say it was not liable for the amounts claimed.

Defendant further contends that the evidence does not show plaintiffs were the holders of the stock on the days the dividends accrued and for which suit is brought, and that the proof does not show that plaintiffs ''were even record holders'' of the stock and further, that ''There can be no recovery in any event for any amount in connection with dividends claimed to have been due on February 1 and May 1, 1939.'' We think none of these contentions can be sustained. Plaintiffs' evidence tended to show, by the stock ledger, plaintiffs were the holders of the stock involved in the suits. And defendant's counsel say ''that all dividends actually paid on this stock by defendant were paid to the stockholders of record of the Kansas City Companies.'' We think this made a prima facie case.

As to the dividends claimed to have been due February 1, and May 1, 1939, defendant contends ''The fact is that every plaintiff who sued in these cases for dividends alleged to have become due on February 1 and May 1, 1939, was paid the full amount sued for on January 5, 1940. This payment was made between

the date on which the three suits specified above were started and June 30, 1941, the date upon which the judgments were entered.'' In reply plaintiffs say that they ''did not release their right to interest. Defendant did not show that the payments made January 7, 1940, amounting to $3 per share were tendered in full payment or that acceptance was conditioned upon release of accrued interest and costs.'' The judgments entered in these cases were for interest only, the principal having been paid. We think plaintiffs were entitled to the interest.

For the reasons stated, the judgments of the Circuit court of Cook county are affirmed.

*Judgments affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.