**Emmett HAMPTON and Hampton Distributing Company, Appellants,**

**v.**

**BLAIR MANUFACTURING COMPANY,**
**Appellee.**

**No. 18465.**

United States Court of Appeals
Eighth Circuit.

April 5, 1967.

Rehearing Denied May 3, 1967.

Clayton H. Shrout, of Shrout, Hanley, Nestle & Caporale, Omaha, Neb., for appellants and filed brief.

Lyle E. Strom, of FitzGerald, Brown, Leahy, McGill & Strom, Omaha, Neb., for appellee and filed brief with Charles A. Schorr, of FitzGerald, Brown Leahy, McGill & Strom, Omaha, Neb.

Before VAN OOSTERHOUT, BLACKMUN and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is a timely appeal by respondents Emmett Hampton and Hampton Distributing Company, a corporation, hereinafter sometimes jointly called Hampton, from the portion of the final order of the District Court permanently enjoining Hampton, reading as follows:

"2. That the respondents, and each of them, the agents, servants and employees of the respondents, and each of them, be, and they hereby are, permanently enjoined and restrained from in any manner producing any item or items, components or parts for feeder wagons, elevators and spreaders or manure spreaders which are interchangeable with the items, components and parts for feeder wagons, elevators and spreaders or manure spreaders covered by the blue prints, drawings and tracings of Kelly Ryan Equipment Company, or any copies thereof, and from in any manner producing or manufacturing or causing to be manufactured, selling or causing to be sold, feeder wagons, elevators and spreaders or manure spreaders containing any item or items, components or parts which are interchangeable with the items, components and parts for feeder wagons, elevators and spreaders covered by said blue prints, drawings and tracings or any copies thereof."

This action was instituted by petitioner Blair Manufacturing Company (Blair) in the reorganization proceedings under Chapter X of the Bankruptcy Act involving Kelly Ryan Equipment Company (Kelly Ryan), debtor. The reorganization court by order filed September 20, 1963, approved a sale of all of the assets of Kelly Ryan, subject to a few exceptions not here pertinent, to Blair, the highest and best bidder. Such sale was subsequently consummated.

Kelly Ryan was a manufacturer of farm implements, including feeder wagons, elevators and spreaders. Its business was operated by a court-appointed trustee from 1956 until the sale to Blair. Emmett Hampton had been sales manager of Kelly Ryan prior to the reorganization proceedings and thereafter he was a distributor of Kelly Ryan equipment with an office in the company's quarters and he continued in such capacity until the sale. Hampton was an unsuccessful bidder on the Kelly Ryan assets.

Emmett Hampton is the controlling stockholder of Hampton Distributing Company, owning all of the stock of the corporation except qualifying shares of directors. He is also its chief managing officer.

Shortly after the sale to Blair, Hampton, who had access thereto, withdrew from the company files blue prints and drawings relating to the manufacture of feeder wagons, elevators and spreaders.

He had no authority or right to withdraw the plans for his own purposes. On October 2 and 3, 1963, the Standard Blue Print Company, at Hampton's direction, made 967 blue prints of Kelly Ryan plans and drawings and delivered the same to Hampton. The originals were then returned to the Kelly Ryan files.

■ Blair, by virtue of its purchase, became the owner of all interest of the trustee and of Kelly Ryan in the plans and drawings and had the exclusive right to use them. As purchaser, Blair has standing to seek the aid of the bankruptcy court in the present situation. See Cincinnati, I. & W. R. R. v. Indianapolis Union Ry., 270 U.S. 107, 116, 46 S.Ct. 221, 70 L.Ed. 490.

Blair, upon learning of Hampton's possession and use of the plans, filed a petition in the reorganization proceedings setting forth its exclusive right to possession and use of the plans and drawings and Hampton's unauthorized possession and use thereof, and praying that Hampton be ordered to turn over to it all such blue prints and plans and copies thereof, and that Hampton be enjoined from making any use thereof. Show cause order was issued and served upon Hampton and after full hearing, order was entered October 23, 1963, directing Hampton to forthwith surrender all drawings and plans and copies thereof relating to feeder wagons and enjoining the use of any such papers or copies thereof. Such order was by stipulation of the parties broadened by order of November 27, 1963, to specifically extend coverage to drawings and plans relating to elevators and spreaders.

On October 30, 1963, Hampton, pursuant to the court's orders, turned over 128 blue prints and plans and in December turned over 494 additional blue prints and plans for which he received receipts. Such turn overs included 622 items.

On December 11, 1963, Blair filed the petition in the reorganization court giving rise to the order appealed from. It asserted that Hampton failed to comply with the turn over and restraining orders of October 23 and November 27, 1963, and further alleged that copies above the 967 copies made by Standard were made by Hampton or at its direction and that Hampton is continuing to make use of such copies in its manufacturing activities in violation of the prior orders. Blair asked that compliance with the prior orders be enforced and that Hampton be enjoined from the production of any items, components or parts, for feeder wagons, elevators or spreaders which were interchangeable with similar items covered by the blue prints, drawings and tracings which had been wrongfully obtained. A show cause order was issued. Hampton filed pleading challenging the court's jurisdiction, which issue the court reserved for final hearing. Hampton filed answer denying all allegations made. Hearing was held on July 29 and 30, 1964. On March 24, 1966, the court filed findings of fact and judgment entry. On the jurisdiction issue, the court found:

"(a) That this Court has jurisdiction over the respective parties and the subject matter of this proceeding, and that this Court, during and immediately after the sale of the assets of the corporate debtor, Kelly Ryan Equipment Company, and as an important act of the reorganization proceeding, possesses jurisdictional authority, as an incident to that proceeding and that sale, by injunctive decree, effectively to assure to petitioner herein its contemplated acquisition of the property so sold to it, and that this jurisdiction is part of the Court's summary jurisdiction in this bankruptcy proceeding."

The court generally and specifically resolved all disputed fact issues in favor of Blair and against Hampton. It again ordered the surrender of all blue prints, drawings and tracings and copies thereof. Section 1 of the court's order which contains the above matter is not attacked or challenged upon this appeal nor are the prior orders of the court directing turn over and restraining use.

The vital issue presented by this appeal is the validity of the injunctive provisions of the final order as contained in the paragraph quoted supra.

The attack upon the injunction is based upon two grounds to wit: (1) The bankruptcy court was without jurisdiction to summarily grant the permanent injunctive relief prayed for. (2) Manufactured products such as those here involved which are not protected by patent are in the public domain and may be copied by those wishing to do so, and hence the permanent injunction prohibiting copying goes too far.

We hold the District Court as the bankruptcy court in which the reorganization proceedings were pending has ancillary jurisdiction to consider the "Petition to Modify Amended Order Entered Herein and to Direct Compliance with said Amended Order" filed December 11, 1963. The petition sets out violations by Hampton of the court's prior orders and asserts that Hampton gained benefits to which he was not entitled by using the plans and drawings in violation of the prior orders. Blair sought enforcement of the prior orders and prayed for the broad injunction which the court subsequently granted and sought general equitable relief.

Courts of bankruptcy constituted by §§ 1 and 2 of the Bankruptcy Act are vested "with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this Act."

"That a federal court of equity has jurisdiction of a bill ancillary to any original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled. * * * And this, irrespective of whether the court would have jurisdiction if the proceeding were an original one. The proceeding being ancillary and dependent, the jurisdiction of the court follows that of the original cause, and may be maintained without regard to the citizenship of the parties or the amount involved, and notwithstanding the provisions of section 265 of the Judicial Code * * *." Local Loan Co. v. Hunt, 292 U.S. 234, 239, 54 S.Ct. 695, 697, 78 L.Ed. 1230.

As pointed out in the case just cited, it does not necessarily follow from the fact that the court has jurisdiction that it is bound to exercise its discretion in favor of granting the relief prayed.

Moreover, if contrary to what we have heretofore held plenary jurisdiction is involved, it is clear that the reorganization court possesses plenary jurisdiction under the circumstances of this case.

In Duda v. Sterling Mfg. Co., 8 Cir., 178 F.2d 428, 434–435, 14 A.L.R.2d 899, this court held:

"But it is now settled that section 102 of the Bankruptcy Act, 11 U.S.C.A. § 502, which provides that section 23 of the Act shall not apply in reorganization proceedings, frees the plenary jurisdiction of the reorganization court from the limitation placed upon the plenary jurisdiction of the bankruptcy court in ordinary bankruptcy. Accordingly, the reorganization court had plenary jurisdiction of the proceedings. * * * *"

Such decision is fully supported by Williams v. Austrian, 331 U.S. 642, 661, 67 S.Ct. 1443, 91 L.Ed. 1718. All parties were afforded a full, fair and complete hearing in the bankruptcy court.

We agree with Hampton's second point, which is that the injunction is too broad. It is undisputed that the feeder wagons, elevators and spreaders manufactured by Kelly Ryan and the component parts thereof are not protected by any valid patent. In Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661, the District Court had determined that Sears by making and selling a pole lamp, "a substantially exact copy" of Stiffel's pole lamp, was guilty of unfair competition under Illinois law and enjoined the manufacture and sale thereof and ordered an accounting to fix damages flowing from the unfair competition. The Court of

Appeals affirmed. The Supreme Court reversed. The Court discusses the objectives of the federal patent laws, noted that patents are a monopoly and are authorized only to reward inventive genius, and that in order to entitle a person to obtain the benefit of a patent monopoly, the patent laws must be strictly observed. Among other things, the Court states:

"'Sharing in the goodwill of an article unprotected by patent or trademark is the exercise of a right possessed by all—and in the free exercise of which the consuming public is deeply interested.' Kellogg Co. v. National Biscuit Co., supra, 305 U.S. [111] at 122, [59 S.Ct. 109, at 115, 83 L.Ed. 73.] To allow a State by use of its law of unfair competition to prevent the copying of an article which represents too slight an advance to be patented would be to permit the State to block off from the public something which federal law has said belongs to the public. * * *

"But mere inability of the public to tell two identical articles apart is not enough to support an injunction against copying or an award of damages for copying that which the federal patent laws permit to be copied." 376 U.S. 225, 231–232, 84 S.Ct. 784, 789.

To like effect see Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669.

■ The reasoning of *Sears* and *Day-Brite* and the holdings therein compels the holding here that Hampton cannot be permanently enjoined from duplicating or copying Kelly Ryan unpatented implements. Hampton's conduct in his surreptitiously obtaining possession and copying the blue prints and drawings of Kelly Ryan and its failure to obey the orders of the court to turn over such documents and not use them is indefensible and warrants the fashioning of appropriate equitable relief. While a fact dispute exists, substantial evidentiary support exists for the court's finding that Hampton retained some copies of the blue prints and drawings and made use thereof in manufacturing feeder wagons substantially the same as those manufactured by Kelly Ryan. Such use of the plans accelerated the time in which Hampton was able to produce the wagons. Hampton had possession of a Kelly Ryan feeder wagon and it seems clear from the evidence that it would be possible in the course of time for mechanics skilled in the field to draw necessary plans for the parts needed to construct the feeder wagons and to build such a wagon from the available model. It is difficult to say just how much time the use of the plans accelerated the production.

We believe that under the facts here the court would have been justified in restraining the production of substantially similar implements for the period that would have been required to reproduce such items without the aid of the plans.

The wrongful acts here occurred in the fall of 1963. The order appealed from was not entered until March 24, 1966. We have no doubt whatever that it would have been possible for mechanics with ordinary skill in the field to have made Hampton wagons substantially identical to the Kelly Ryan wagons without the use of the blue prints long before 1966 and hence no purpose would be served in remanding this case for further fact findings looking toward granting injunctive relief for the period that would be required to reproduce the wagons without the wrongful use of the plans.

■ Additionally, the injunction proscribes the production of any part of any implement which is interchangeable with a part of the Kelly Ryan equipment. Such broad language would prohibit the use of much ordinary and uncomplicated stock equipment such as wheels, axles, frames, flooring and siding.

■ Blair argues that there has been a palming off of Hampton's products as those of Blair. Such issue is not fairly raised in the pleadings and even if raised, such an issue of unfair competition would not fairly fall within the sum-

mary jurisdiction of the bankruptcy court.

The record shows the issue of some contempt of court orders. No contempt issues are before us on this appeal.

Our present decision is strictly limited to our holding that the broad provisions of paragraph 2 of the order for injunction heretofore quoted in full enjoining production of implements similar to those of Kelly Ryan are invalid.

The order appealed from is modified by striking therefrom all of paragraph 2 of said order and the portion of the order contained in paragraph 2 is vacated.