**Luis FELICIANO, Petitioner,**

**v.**

**Hon. Melvin R. LAIRD, Secretary of Defense, Hon. Stanley Resor, Secretary of the Army, Commanding Officer, Fort Wadsworth, Staten Island, New York, Respondents.**

**No. 70-C-103.**

United States District Court,
E. D. New York.

Feb. 10, 1970.

Chester L. Mirsky, New York City, for petitioner.

Edward R. Neaher, U. S. Atty., Eastern Dist. of New York, for respondents, James A. Pascarella, Asst. U. S. Atty., of counsel.

ROSLING, District Judge.

Petitioner was inducted into the United States Army June 29, 1969, and received his training at Fort McClellan, Alabama. He was then on November 17, 1969, ordered to report to Oakland, California, by December 16, 1969, where he was to be further assigned to Viet Nam. Pending his reporting at Oakland he was granted leave to November 25, 1969. While on leave he filed an application for compassionate reassignment with the Department of Army, in Washington, D. C.

In the meantime he appears to have been temporarily assigned to Fort Wadsworth in Staten Island pending determination of such application. The mailing of the application directly to Washington was in conformity with Army procedures in view of the fact that he was at the time on leave and in a period of transition without a commanding officer with whom the application might otherwise have been filed. He was, nevertheless, assisted in the preparation of his papers by personnel at Fort Wadsworth charged with such duty. Additionally he was aided by his own counsel who tried his case before the Court.

His application with documentation was duly processed in Washington in accordance with the criteria established by the Army for action in such situations and was disapproved by Colonel Lo Re on December 4, 1969. Colonel Lo Re's action was in conformity with the rejection separately and independently recommended to him by two Army officers who passed upon the application.

The written message of rejection, transmitted through the Pentagon to the Commanding General of Fort Wadsworth, reached petitioner in ordinary course on December 7, 1969, and by Army procedure should have been transmitted orally to petitioner.

Additionally, on December 4, 1969, a copy was airmailed to petitioner at 171 Eldridge Street, New York City,[1] the address of his wife given by him on the application.

Inasmuch as Colonel Lo Re's determination is subject to no review, the Court

---

1. Petitioner did not take the stand to dispute mailings or other procedures testified to by government witnesses. All steps appear to have been taken in regular course and the Court finds that letters claimed to have been mailed to petitioner were in fact received by him, and oral communications alleged to have been had with him were, in fact, had.

determines that petitioner exhausted his remedies with respect to such application.

Question 27 of the application with petitioner's "X" mark indicates his election of further procedures as follows:

"If reassignment under Para–10, AR 614–240 is not approved, does the applicant desire the application to be considered for a permissive reassignment under Para–11, AR 614–240 ☐ yes ☐ no, or a hardship discharge (AR 635–207) ☒ yes ☐ no."

On December 16, 1969, petitioner executed a detailed four-page Army "Application for Separation—Hardship or Dependency" and filed it with the United States Army Personnel Center Hardship Review Board, Lieutenant Colonel N. DeMaria, commending at Fort Wadsworth. All the documents earlier submitted to Washington in support of the compassionate reassignment application were resubmitted with the hardship application. Two additional documents appear to have been added to the file. These additional items were a brief "To whom it may concern" note dated December 16, 1969, from Dr. Harvey D. Karkus, who had already submitted two somewhat longer letters. One dated April 14, 1969, concerned itself with Maria Bravo, mother of the petitioner. The other, equally long, dated November 26, 1969, dealt with the "psychiatric evaluation" of petitioner and his wife.

Dr. Karkus' memorandum of December 16th notes the premature birth of the expected child and the continuing depression of the seventeen year old wife of petitioner.

The second of the additional documents filed by petitioner in support of his hardship application is a memorandum certifying that petitioner's present attorney has a job offer for him in his office with a compensation to be paid of $50 a week.

Colonel DeMaria testified as to the procedures followed in processing the hardship application. Four officers separately reviewed the complete file and submitted their several recommendations to him. All disapproved. His was the final word. He too disapproved. On the stand he analyzed the basis of such disapproval. His analysis was clear and persuasive. Far less, however, is required to sustain his action, as will later be shown.

On December 22nd Colonel DeMaria in writing notified the Commanding Officer of U. S. Army Personnel Center, Fort Hamilton, Brooklyn, of such disapproval, and on December 29 formal notice was transmitted through various channels, certifying such disapproval and directing petitioner to report January 9, 1970, to Commanding Officer, United States Army Overseas Replacement Station, Oakland, California, for transportation to the Republic of Viet Nam.[2]

Had the hardship application been granted, petitioner would have been discharged from service. Petitioner now reverted to his prior procedure which sought the lesser relief of a compassionate reassignment. His attorney again telephoned Colonel Lo Re in Washington to renew his earlier application for such relief. Responsive to his request, the Department of the Army continued petitioner at Fort Wadsworth while his reconsidered application was processed.

Petitioner's renewed application was denied a second time, and he was duly notified of such denial. Orders were issued January 26, 1970, detaching him from Fort Wadsworth January 27, 1970, and directing him to report to Oakland, California, for transfer to his unit, presumably en route to, or arrived in Viet

2. December 4, 1969, notice to petitioner, advised him in relation to his pending proceedings that he was authorized to report to Fort Wadsworth upon expiration of his leave, and that he would be retained there until January 1, 1970. At that date he was to be released to comply with orders or to apply for a hardship discharge.

Nam, the date of report being fixed as not later than January 31, 1970.

Petitioner on January 27, 1970, instituted this action in which he seeks a writ of habeas corpus for his release from the Army.

■ The Army procedures established for both the compassionate and the hardship-dependency applications are fair, reasonable and adequately solicitous of the petitioner's interests. Due process is adhered to. These procedures were carefully followed. Adequate support for the determinations made is found in the documentary record as elucidated by the testimony of Colonels Lo Re and DeMaria.

No extended discussion of authority is required for the Court's determination of the issue before it. It suffices that the Court refer only to last week's decision in the court of appeals of this circuit in Nixon v. Secretary of the Navy [3] in which the principles to be applied are compendiously stated.

First as to jurisdiction, *Nixon* states the rule as follows:

"While the courts are reluctant to interfere in military affairs, the Navy is bound by its own validly promulgated regulations, and the district courts are free to entertain suits by servicemen requesting compliance with such rules. Smith v. Resor, 406 F.2d 141 (2 Cir. 1969); Hammond v. Lenfest, 398 F.2d 705 (2 Cir. 1968)."

■ The Court's power to interfere in reviewing discretionary military decisions is very narrowly circumscribed. The *Nixon* opinion says in this connection:

"[I]t is necessary briefly to examine the district court's power in the area of discretionary military decisions. As the Supreme Court stated in Orloff v. Willoughby, 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953), the day-to-day operations of the armed forces are best left to the military,

and the courts should not play a role in reviewing the exercise of discretionary military decisions. But as we noted in United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371, 374 (2 Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969), there are certain limitations to this 'hands-off' policy, and official military conduct may go so far beyond the limits of what may be considered a rational exercise of discretion as to call for mandamus. Appellant claims that this is true where the power to make a discretionary decision exists, and yet the appropriate official declines or neglects to exercise his discretionary power. See United States v. Nebbia, 357 F.2d 303 (2 Cir. 1966); Udall v. Taunah, 398 F.2d 795 (10 Cir. 1968); Connett v. City of Jerseyville, 125 F.2d 121 (7 Cir. 1942)."

When the reviewing officer follows reasonable guidelines established by the service in exercising discretion, he follows, according to *Nixon,*

"an administrative practice which is to be commended rather than condemned, so long as the classification of those ineligible for cancellation [of an enlistment extension agreement] has a reasonable and logical basis, such as getting a fair return in longer service from those who have sought and received costly specialized training, and is not simply arbitrary. See K. Davis, Discretionary Justice 97–114 (1969)."

■ Finally, failure on the part of the Army review officer to exercise his discretion would not authorize this Court to substitute for him in that regard. *Nixon* tells us that

"[i]n such a case we [i. e. the court of appeals] would be limited to remanding the case to the district court with instructions to direct the Chief of Naval Personnel to give the request further consideration. Any other ac-

3. 422 F.2d 934 (2d Cir. 1970).

tion would be an impermissible infringement on the power of the Navy first to exercise its discretionary powers. See Guffanti v. Hershey, 296 F. Supp. 553, 555 (S.D.N.Y.1969)."

█ The application for a writ of habeas corpus or any other relief which the Court has jurisdiction to grant[4] is denied and the application and proceedings are dismissed on the merits.

The foregoing decision constitutes the findings of fact, conclusions of law, and order of the Court.

So ordered.

4. See United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371 (2d Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969).